# Richmond

KATHRYN KEELER v. WALTER H. BAUMGARDNER.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Thomas F. Walker* and *Donald T. Stant,* for the plaintiff in error.

*George P. Young* and *Stuart B. Campbell,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Walter Baumgardner instituted an action by notice of motion against Kathryn Keeler to recover for personal injuries he sustained by reason of being struck by an automobile driven by Mrs. Keeler. There were two trials of the case in the lower court, the first resulting in a verdict for the plaintiff for $5,000.00, which the court set aside, and the second in a verdict of $7,000.00, which the court refused to set aside. Judgment was entered upon the second verdict.

The record in both trials is before us, and under well-established rules in this jurisdiction it becomes the duty of this court to look first to the evidence and proceedings of the first trial and if it is discovered that the court erred in setting aside the verdict in the first trial this court will set aside all proceedings subsequent to the first verdict and enter judgment thereon. *Clark* v. *Hugo,* 130 Va. 102, 107 S. E. 730; *Hogg* v. *Plant,* 145 Va. 175, 133 S. E. 759, 47 A. L. R. 308; *Peninsula Produce Exch.* v. *Upshur,* 149 Va. 639, 140 S. E. 651; *C. & O. Ry. Co.* v. *Nickel,* 157 Va. 382, 161 S. E. 248.

The trial court in its order setting aside the verdict in the first trial indicated only one reason for doing so and awarding a new trial. The relevant portion of that order is in this language: "* * * that there was error in allowing the question of plaintiff's right to recover under the doctrine of last clear chance to go to the jury by instructions * * *." If the court erred in setting aside the verdict for the reason stated in the order (there being no other valid reason disclosed for setting it aside), then under the rule of decision previously referred to where there have been two trials of a case in the lower court, this court will annul all subsequent proceedings and enter judgment upon the verdict rendered in the first trial. It therefore becomes necessary to inquire into the correctness of the ruling of the court in granting an instruction or instructions upon the familiar doctrine of the last clear chance. Of course, if the evidence justified an instruction upon that doctrine, then the court committed reversible error

when it set aside the first verdict because such an instruction had been granted.

The acts of negligence alleged in the notice are that Mrs. Keeler was driving without lights at the time the automobile was driven against the plaintiff; that she was driving the automobile at a greater speed than that allowed by law; that she was not keeping a proper lookout for pedestrians; that she failed to give any warning of her approach; that her brakes were not in good working order; that she could have avoided striking the plaintiff if she had slackened the speed of the automobile, or had given any warning, or had driven to the left of the plaintiff, and that she had a clear chance to avoid the plaintiff if she had exercised ordinary care.

The material facts, stated in the light of the verdict of the jury in favor of the plaintiff which settled the substantial conflicts in the testimony in his favor, are as follows: The collision between the plaintiff and the automobile driven by Mrs. Keeler occurred on the main street of the town of Wytheville on Saturday evening, December 6, 1930, about 6:30 o'clock, when it was dark. The night was "rainy and misty" and the street was wet. The street is sixty feet wide from curb to curb, and automobiles were parked on both sides at an angle of forty-five degrees. The space between the parked cars on the one side and those on the other was some thirty-five to forty feet, and it was left open for moving vehicles traveling easterly and westerly. The street was partially illuminated at the time by ordinary street lights, by the lights from the stores, which were open for business, and the lights from the office of the Appalachian Power Company.

The collision between the plaintiff, who was walking diagonally across the street, and the automobile driven by Mrs. Keeler occurred at a point, between intersections, about one hundred forty-six feet easterly from the easterly curb of Church street where it intersects with Main street, and on her right side of the street just about three

or four feet from the rear of the parked cars on the southerly side.

Mrs. Keeler, with her guest, Miss Hufford, was proceeding in an easterly direction on Main street. She was driving on her right side of the street and had brought her car to a stop at the intersection of Church and Main streets (which was 160 to 195 feet from the point of accident) to allow pedestrians to cross from the northerly to the southerly side of Main street. Afterwards she proceeded easterly on Main street, which ascends in grade, to the point where the plaintiff was struck. According to the testimony of some of the plaintiff's witnesses, she was driving at the time between fifteen and twenty miles an hour with no light burning on her car. She gave no warning of her approach. The speed of her car and the testimony that the lights were not burning and the failure to give the plaintiff warning by sounding her horn are facts established in favor of the plaintiff by the verdict of the jury. Of course, the testimony about those material facts was in conflict, but the jury has accepted the version of the plaintiff and some of his witnesses, and we are bound thereby. Therefore we must accept as established facts, that the speed of the car was from fifteen to twenty miles per hour; that no warning was given the plaintiff, and that the lights on Mrs. Keeler's car were not burning at the time it approached the plaintiff or at the time it collided with him. The report of a "loud crash" was heard by some of the witnesses, and the plaintiff was knocked some fifteen or twenty feet, according to the testimony of other witnesses. The loud report of the crash and the distance he was knocked, also controverted, but established by the verdict, is, to an extent, indicative of fast driving and corroborates the other testimony referred to as to speed. Another important fact, also established by the verdict, is that there was no other traffic moving in either direction on Main street from the time Mrs. Keeler left the intersection of Church and Main streets until she

drove against the plaintiff. There was no object between her car and the plaintiff to obstruct her vision.

The plaintiff, accompanied by his friend, Carter, left his jewelry store, which was located across the street on the northerly side some thirty to thirty-five feet east of the intersection, and started across Main street diagonally, intending to get into Carter's car, which was parked on the southerly side of the street about one hundred and forty-six feet from the east line of Church street where it intersects with Main street. They proceeded from the sidewalk between parked cars to a point where they had an unobstructed view of Main street in both directions, looked for vehicles in both directions and continued diagonally to the center of the street, where the plaintiff again looked for vehicles, and seeing none "apparently near to me," he continued in the same direction across the southerly side of Main street to a point about three or four feet from the rear of the line of parked cars on that side (almost across the traveled portion of the street), and was struck and knocked down in the street by the car driven by Mrs. Keeler. His injuries were serious.

Mrs. Keeler testified that she did not see the plaintiff in his journey across the street. She saw him for the first time in front of her car just immediately before the car struck him. The plaintiff says that he did not see the car until it had struck his right leg, then he saw the "black bulk of something as I glanced down sideways."

From the evidence in the first trial, from which the facts above stated were taken, the trial court considered that it was sufficient to warrant an instruction upon the doctrine of the last clear chance. Such an instruction was granted. After the verdict in favor of the plaintiff had been returned, the court, upon mature consideration, decided that such an instruction was improper and prejudicial, and on that account alone set aside the first verdict of the jury and awarded a new trial. This action of the court is the sole question to be considered by us in examining the proceedings and evidence of the first trial.

None of the instructions given the jury upon the first trial are incorporated in the record and no reference is made to them except that dealing with the doctrine of the last clear chance, which is referred to in the order of the court setting aside the verdict. We will assume, however, that they fully and correctly defined the law of the case. If the evidence justified an instruction on the doctrine of the last clear chance we will also assume that it correctly propounded the law on that subject. The determinative question and the only one we deem it necessary to discuss is whether or not the evidence in the first trial warranted such instruction. If it did, then the court erroneously set aside the first verdict for the plaintiff of $5,000.00 and it will now be reinstated and all subsequent proceedings must be set aside.

█ A great deal has been written, both within and without this jurisdiction, about the doctrine of the last clear chance and when it is applicable to the evidence in the cases which have arisen. Possibly nothing could be gained by an attempt to add to what has been said. Certain it is that when the court is urged to apply the doctrine, it must look to all of the evidence, which, of course, includes the testimony of all of the witnesses, the physical facts and all of the facts and circumstances which are relevant to the case. If from all of the evidence the jury could reasonably find that regardless of the state of negligence of the plaintiff, the defendant, by the exercise of ordinary care, had a clear chance to save him and failed to do so, then an instruction on the doctrine is justified. In cases, such as the one here, where a defendant is required by law to keep a proper lookout, the test is not whether he actually saw the plaintiff in time to have saved him, but whether he could have seen him in time to have avoided the injury, by exercising ordinary care, and failed to do so.

█ The jury could have reasonably found from the evidence that Mrs. Keeler was guilty of no actionable negligence or that if she were, then the plaintiff was guilty of

either contributory or concurring negligence, which, of course, would have barred a recovery. On the other hand, they could just as reasonably have found that Mrs. Keeler was guilty of primary negligence, and that the plaintiff was guilty of no negligence which proximately and efficiently contributed to his injury; or they could have found that while the plaintiff was in a state of negligence in crossing the street diagonally between intersections without exercising proper care for his safety, Mrs. Keeler ought to have seen him in his peril, in the exercise of ordinary care, and avoided striking him with her car either by stopping it or by diverting its course. If the jury could have drawn the latter conclusion from the evidence, then the plaintiff was entitled to have the jury instructed by the court on the last clear chance.

If Mrs. Keeler was driving at sixteen miles per hour and the plaintiff was walking at four miles per hour (and the jury could have so concluded), the latter was necessarily in the middle of the street when Mrs. Keeler was some one hundred and fifty or one hundred and sixty feet away, and during the time she traversed that distance there was no object which would have obstructed her view of him. He was within her field of vision all of the time consumed by her in traveling this distance, and during which time he walked about forty feet. If it were dark and her lights were not burning and the other artificial lighting did not fully illuminate the street, even then the jury could have concluded from the physical facts and the testimony that she could have seen him, by exercising ordinary care, a safe distance away and could have avoided striking him.

Quite recently this court, speaking through Justice Hudgins, in the case of *Roanoke Ry. & Elec. Co.* v. *Korb*, 155 Va. 296, 154 S. E. 550, 552, approved the action of the trial court in applying the doctrine of the last clear chance to the facts and circumstances developed in the trial of that case. There the collision occurred between an electric street car and an automobile, and the same defenses were made there as here—that is, that there was no evi-

dence of the primary negligence of the defendant company, and if there were, then the plaintiff was guilty of contributory or concurring negligence. At the trial an instruction was granted on the last clear chance and upon the writ of error to this court it was earnestly maintained that there was no evidence which justified such an instruction, but this court held otherwise and approved the action of the lower court in granting such an instruction. Justice Hudgins, in that case, said:

"The next assignment of error is the action of the court in giving an instruction on the doctrine of the last clear chance. The ground of objection to the giving of such an instruction is that there is no evidence on which to base it.

"The admitted facts show that the collision occurred at the intersection of two busy thoroughfares, that the street car turned from one street into another on a curving track. The plaintiff in error introduced evidence tending to show that as the automobile went upon the rails the street car was twenty feet away, approaching at a speed of only seven or eight miles an hour, and traveling at such speed could have been stopped in four or five feet. As heretofore stated, the street car struck the automobile on the rear left fender and dragged it twenty-five to thirty feet. The automobile, traveling at six miles an hour, would have gone approximately nine feet in a second. Under such circumstances, in less than a second the automobile would have cleared the tracks. Some of the witnesses of defendant in error testified that the emergency brake was never applied. The defendant in error stated that he assumed the street car was approaching at normal speed. It was the duty of the defendant company to keep a lookout, and if its motorman saw, or by the exercise of reasonable care could have seen, the perilous position of defendant in error he should have stopped, or slowed down, his car, and thus have prevented the collision. Considering the physical facts, the surrounding circumstances, and the evidence of the defendant company's own witnesses, there is sufficient evidence in the record to sustain a ver-

dict based on the doctrine of the last clear chance; hence there was no error in giving this instruction.

"As was stated by Judge Kelly in the case of *Virginia Ry. & Power Co.* v. *Wellons* [133 Va. 350, 112 S. E. 843], *supra:* 'If the discovery of the inevitable was made, or ought to have been made, before it was too late for him to slow down or stop, he (that is, the motorman) would have the last clear chance to avoid the injury, and the street car owner would be liable, regardless of the fact that the negligent conduct of the driver of the vehicle precipitated the situation.' * * * "

■ Our conclusion is that upon the first trial there was sufficient evidence to warrant the granting of an instruction upon the doctrine of the last clear chance, and that the court erred in setting aside the verdict in that trial for that reason. The first verdict of $5,000.00 in favor of the plaintiff will be reinstated and this court will now enter judgment thereon. All other proceedings subsequent to the verdict in the first trial are set aside.

*Reversed.*

EPES, J., dissenting.