# Wytheville

EDITH DOBSON-PEACOCK AND SWIFT NELMS, JR. v. LEILIA M.
CURTIS.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Donald W. Shriver* and *Hughes, Little & Seawell,* for the plaintiffs in error.

*Venable, Miller, Pilcher & Parsons,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Lelia M. Curtis, while walking across Olney road in the city of Norfolk, was struck and severely injured by an automobile owned by Edith Dobson-Peacock and driven by Swift Nelms, Jr. The verdict and judgment of $10,000 which she has recovered against both the owner and operator of the car are here for review. The parties will sometimes be referred to as they appeared before the trial court.

Olney road runs approximately east and west, is thirty-two feet wide from curb to curb and paved with asphalt. On the early afternoon of November 8, 1934, the plaintiff left her residence on the south side of Olney road for the purpose of going to a store located across the street and a short distance west of her home. The weather was fair, the visibility was good and the pavement was dry. She walked west along the south side of the street until she

reached a point nearly opposite the store and about 100 feet from the nearest street intersection. She says that before leaving the curb she looked both ways and seeing no traffic approaching from either direction started straight across the street towards the store. When she had about reached the center line of the street she saw for the first time the westbound Peacock car advancing "very rapidly" on her right and about 100 feet away. Thinking that the driver had seen her and that she could safely cross ahead of the car, she hastened her steps and had gotten to the north curb when she was struck by the left front fender of the automobile which had swerved sharply to its right and run up on the sidewalk in front of the store. According to her testimony and that of other witnesses, if the car had continued on its straight course instead of swerving to the right, it would have safely passed her.

The testimony on behalf of the plaintiff showed that there were no cars parked on either side of the street in the vicinity of the accident nor was there any traffic approaching from either direction. Hence the driver had an unobstructed view of her from the time she left the curb until she was struck. There was evidence from which the jury could have inferred that the car was traveling at a high rate of speed. Some of the witnesses said that it skidded from seventy-five to eighty feet before it went up on the sidewalk.

The driver of the car testified that he was proceeding at a speed of about twenty-five miles an hour when Miss Marjorie Peacock, who was sitting on the front seat with him, cried "Look out!" Then for the first time he saw the plaintiff in the middle of the street about fifty feet from the front of his car. He blew his horn, and inasmuch as the plaintiff looked towards him he thought she was going to allow the car to pass. When he realized that she was not going to stop he put on his brakes and swerved his car to the right in an effort to avoid the plaintiff. He said the collision occurred about the center of

the street, after which his car went up on the sidewalk. He further testified that the plaintiff appeared so suddenly in the street that he was under the "impression" that she had come from behind a car parked on the south side of the street, but as to this he was not positive.

The principal assignment of error is that the court erred in not striking out the plaintiff's evidence or in not setting aside the verdict and entering a final judgment for the defendants. The defendants admit that there was sufficent evidence to warrant the jury in finding that the driver was guilty of negligence in driving at an excessive speed and in failing to keep a proper lookout. But they earnestly insist that the plaintiff was, as a matter of law, guilty of negligence which concurred with that of the driver down to the moment of the collision and that such bars her recovery. This was the situation in *Frazier* v. *Stout,* 165 Va. 68, 181 S. E. 377, which is strongly relied on by the defendants.

The plaintiff, on the other hand, while admitting that she was "in a state of negligence" in crossing the street between intersections, and in not seeing the car before she left a place of safety at the curb, contends that the jury had the right to find that her negligence was the remote cause and that of the driver was the proximate cause of the collision; or, in other words, that it was a jury question whether the driver had the last clear chance to avoid the accident. She relies on *Perkinson* v. *Persons,* 164 Va. 172, 178 S. E. 682, and *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592, to sustain the verdict.

The issue is thus sharply drawn by the parties. In deciding it we should bear in mind that a defendant is liable under the last clear chance doctrine both where he actually sees the peril of the plaintiff and fails to exercise ordinary care to avert the injury, and also where the defendant, being under a duty to keep a proper lookout for the plaintiff, by the exercise of ordinary care *should have seen* the plaintiff's peril in time to have avoided the injury by the use of ordinary care. *Barnes* v. *Ashworth,*

154 Va. 218, 243, 153 S. E. 711; *Perkinson* v. *Persons,* 164 Va. 172, 177, 178 S. E. 682.

In the case before us the defendant was under a duty to keep a reasonable lookout for pedestrians crossing the street. Therefore, the test to be applied here is not whether he *actually saw* Mrs. Curtis in time to have saved her, but whether under all of the circumstances, in ·the exercise of ordinary care, he *should have seen* her in time to have avoided the accident by the exercise of ordinary care. *Keeler* v. *Baumgardner,* 161 Va. 507, 513, 171 S. E. 592. If there was sufficient evidence on which the jury could base a finding that by exercising ordinary care the driver should have seen the plaintiff's peril in time to have avoided the accident by the use of ordinary care, and yet failed to do so, the judgment should be affirmed.

According to the testimony of the driver of the car he could have stopped within thirty-eight feet under the conditions then existing. He said that when he first saw Mrs. Curtis she was fifty feet from the front of his car. While these distances are, of course, estimates the jury may have inferred from this testimony that the driver, by the exercise of ordinary care, could have stopped within this distance and avoided the collision.

Furthermore, according to the plaintiff's witnesses there were no cars parked on either side of the street. The plaintiff was, then, in plain view of the driver from the time she left the curb until his companion exclaimed "Look out!" The jury may have believed that he should have seen her sooner. If so he would have seen that she was unconscious of her peril, for she said that she had not seen the car until she reached the center of the street. The jury may have believed that his failure to see her walking towards the center of the street, unmindful of the approaching car, was the proximate cause of her injury. They may have thought that after the driver saw her in the center of the street, by the exercise

of ordinary care he could have so guided the car as to have avoided her.

We think the case is distinguishable from *Frazier* v. *Stout,* 165 Va. 68, 181 S. E. 377, in several particulars. In that case the pedestrian testified that before she left the side of the road she saw the car rapidly approaching and actually saw that the driver was looking to the side of the road and not towards her. And yet she left her place of safety and endeavored to cross in front of the automobile. In the case before us the plaintiff had no knowledge that the driver was not keeping a proper lookout. While it is true that she was charged with knowledge of the approaching car which she should have seen, she was not charged with knowledge that the driver was not keeping a lookout. Indeed, she had the right to assume that any driver proceeding along the street would be keeping a reasonable lookout.

Again, in the *Frazier Case* the pedestrian was looking at the oncoming car from the time she left the side of the road until she stepped into its path. Being aware of the approaching car its driver had the right to assume that she would stop and allow him to pass. When he was only fifty feet away he realized that she was not going to do so. At the admitted speed of from forty to fifty miles per hour it was then impossible for him to have stopped before striking her. In the case at bar if the driver had been keeping a proper lookout he would have seen the plaintiff before she reached the center of the street. He would have seen that she was not looking at the approaching car but on the contrary was unmindful of her peril. He had no right to presume that she would give him the right of way because she had not seen him.

On the whole our conclusion is that it was a question for the jury as to whether the driver, under all of the facts and circumstances, had the last clear chance to avoid the collision.

It is next urged that there is no evidence to support the verdict against the defendant, Mrs. Edith Dobson-

Peacock, the owner of the car. The evidence discloses that the car was purchased and maintained by Mrs. Peacock and used by her and the other members of her family. As none of them knew how to drive, Mrs. Peacock engaged the defendant, Nelms, a young man twenty-one years of age, for the purpose. While Nelms was not paid for his services, Mrs. Peacock and the other members of her family regularly and principally relied upon him to drive for them. This he did frequently. On such occasions he was under the direction and control of the owner of the car. He went as and when she directed, either express-ly or impliedly. This arrangement was made when the car was purchased and continued until the time of the accident. On this particular occasion, and in accordance with this arrangement, he had taken Miss Peacock to the railroad station to see her friend. Under the circum-stances we think that Nelms' status was that of a chauffeur without pay, or a gratuitous agent, of the owner of the car and that she was liable for his negligence. Huddy Enc. of Auto. Law (9th Ed.) vol. 7-8, p. 231, note 36; Blashfield Enc. of Auto. Law, vol. 2, pp. 1317, 1318.

 There is no merit in the claim that the verdict was excessive. The plaintiff sustained a broken pelvis, a broken hand, injuries to her head and serious internal injuries which, at the time of the trial, had confined her to a hospital for three months. And even then she had not been discharged or cured.

We find no error in the judgment of the lower court and the same is affirmed.

*Affirmed.*

CHINN, J., dissenting:

The driver of the automobile had no reason to anti-cipate that the plaintiff would attempt to cross the street between intersections in violation of the statutory regula-tions and was, therefore, under no duty to be on the lookout for Mrs. Curtis at the place of the accident. The

evidence shows that when Nelms actually saw Mrs. Curtis, he did all he could to avoid the injury in the emergency. He testified that he first saw the plaintiff when she was about in the center of the street and thought she would certainly stop but when he saw that she was going to continue across the street, he applied his brakes and as soon as he passed the automobiles which were parked along the curb on the north side of the street, he swerved to the right to keep from hitting her. It is testified by plaintiff's witnesses that the marks in the street showed that Nelms applied his brakes and dragged his wheels for a distance of sixty or seventy-five feet before he swerved the car to the right and ran up on the sidewalk in an effort to avoid striking the plaintiff.

I think the case is controlled by *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486, and *Frazier* v. *Stout,* 165 Va. 68, 181 S. E. 377, in which the facts are, in the main, quite similar to those in the case at bar, and the same principles of law seem applicable. Plaintiff in the instant case says she saw this automobile rapidly approaching when she first reached the center of the street, but continued on across because she thought she could reach the sidewalk safely. If she had stopped when she saw the car coming it would have passed between her and the curb and there would have been no accident. When, therefore, she stepped in the path of this speeding automobile, she was guilty of negligence which proximately and effectively contributed to the injury, and bars recovery. While it is also true the injury would not have occurred if Nelms had kept a straight course instead of turning to the right, this under the circumstances constitutes error of judgment on his part, and not negligence. It is well settled that one suddenly confronted by an emergency created by the negligence of another, and compelled to act instantly, is not guilty of negligence if he makes such choice as an ordinarily prudent person might have made, even though the choice might not have

been the wisest one. *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545. But assuming Nelms was negligent the case, as it seems to me, is simply one of concurrent negligence in which there can be no recovery. Neither can the doctrine of the last clear chance apply, for the obvious reason, among others, that Mrs. Curtis had the same, or a better, opportunity to save herself as the defendant had to protect her.

I think the judgment of the lower court should be reversed.