# Richmond

## J. Gordon Bennett, Adm'r, Etc. v. Elizabeth and Thomas M. Spencer.

### January 14, 1937.

### Present, All the Justices.

The opinion states the case.

*Martin & Tuck* and *G. E. Mitchell, Jr.*, for the plaintiff in error.

*McKinney & Settle* and *M. B. Booker*, for the defendants in error.

BROWNING, J., delivered the opinion of the court.

In this opinion the parties will usually be referred to by their proper names.

Elizabeth Spencer, a girl 17 years old, the daughter of Thomas M. Spencer, the co-defendant in this suit, was driving her father's Chevrolet sedan with her young friend and schoolmate, Sarah Nichols, in the town of South Boston, Virginia, on January 23, 1935, at about 7:15 o'clock P. M. On this drive they entered Main street at the post office and turned south to the right intending to continue on Main street to the Southern Railway depot and there turn around and go back to Miss Spencer's home. They proceeded on their way south for approximately three blocks when, at a point 50 feet north of the intersection of Main and Bank streets their car struck W. R. Bennett, who was standing near the middle of the street, knocking him down and severely injuring him, from which injuries he died a fews days later.

The administrator of the estate of Bennett instituted an action against Miss Spencer and her father which resulted in a verdict for the plaintiff in the sum of $5,000, which verdict the trial court set aside and entered final judgment for the defendants.

A brief summary of the facts, stated in the light of the ver-

dict of the jury in favor of the plaintiff, which settled the substantial conflicts in the testimony in the plaintiff's favor are as follows: The collision between the plaintiff and the automobile driven by Miss Spencer occurred on the main street of the town of South Boston on January 23, 1935, at about 7:15 o'clock P. M., when it was dark. The night was misty and the street was wet. The street is 44 feet wide from curb to curb. It was what the witnesses called, "about supper time," and there was very little traffic. There were no automobiles parked on the west side of Main street which was the side which should have been traversed by Miss Spencer. It was a business district. There were no obstructions in the line of vision between Miss Spencer's car and the point where Bennett, the deceased, was standing for certainly more than 100 feet. Indeed it does not appear from the evidence that there was any hindrance, in the form of intervening objects, to her ability to see him while she was driving on Main street. There is a slight descending grade in the direction that she was going. The street was lighted at the time by electric lights on iron posts and such lights as were afforded by those of shops and stores, which were occupied at the time. One of these town electric lights was located a short distance south of the intersection of Main and Bank streets. Another was about the middle of the block between Bank and the next street north and still another was at the intersection. The street was wet, which darkened the asphalt and to some extent absorbed the rays of light, though Fourquean, policeman, testified that there was nothing to keep one from seeing an object a considerable distance away and Noland, policeman, testified that the lights were as usual and that an object could be seen more than 100 feet away. We stress this feature here because the defense was largely based on the contention that the street was inadequately lighted and under the conditions which obtained Miss Spencer could not see the deceased until her car was only 8 feet away. The deceased was dressed in a navy blue uniform with a uniform top coat and a policeman's cap. He was standing about 50 feet north of the intersection referred to with his back toward Miss

Spencer's car with both hands thrust above his head and pointing southwardly to the intersection where he maintained that a traffic light should be placed. This he was saying to Fourquean, a fellow policeman, with whom he had walked .from the western curb diagonally across to that point. Fourquean placed Miss Spencer's speed at from 30 to 35 miles an hour. Miss Spencer and her companion, Miss Nichols, fixed it at about 20 miles an hour. At any rate the deceased was knocked some distance from the point of impact, the glass of the right head light of the car was shivered and the bits were scattered on the street and Miss Spencer stopped her car by swerving to the left and going into the curb on the eastern side. It is noteworthy that there was one windshield wiper on the car and it was working properly. Miss Spencer stated that she did not see the deceased until she was within 8 feet of him and could not avoid striking him. Miss Nichols who was on the side of the car where there was no windshield wiper saw the deceased through misty glass when they were 8 feet from him and called to Miss Spencer to watch out.

It is perfectly patent from the evidence that the deceased never saw Miss Spencer's car. While walking down the street he had been joined by the two officers who were just beginning night duty and they proceeded down the street some distance discussing the police affairs of the town when a telephone call took one of the three across the street and the other two proceeded as has been described.

It is equally clear that Miss Spencer could not have kept the lookout that the law required of her. If she had there was nothing to prevent her from seeing these two men cross over to about the center of the street and stand side by side, and this she could have done in ample time to have seen them and either stopped her car or diverted its course and avoided the catastrophe that ensued.

It may be conceded that the deceased was in a continuous state of contributory negligence, but he was visible for a considerable distance and had Miss Spencer been looking, as was her bounden legal duty, she could have avoided the accident. It is plain to us that this is a case for the ap-

plication of the last clear chance doctrine. Miss Spencer had the last chance to avoid the tragic happening. It was a clear chance but she did not avail herself of it. The act and its unhappy result carry no turpitude so far as Miss Spencer is concerned. She would doubtlessly have given everything in the world she possessed for it not to have happened. It was doubtless the inadvertence of buoyant and exuberant youth engrossed in its own concerns at the time. But the law does not excuse it when untoward results bring it in review and society and its votaries and everybody else are bound by the law and must be.

■ This court in the recent case of *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592, 594, said through Justice Gregory:

"A great deal has been written, both within and without this jurisdiction, about the doctrine of the last clear chance and when it is applicable to the evidence in the cases which have arisen. Possibly nothing could be gained by an attempt to add to what has been said. Certain it is that when the court is urged to apply the doctrine, it must look to all of the evidence, which, of course, includes the testimony of all the witnesses, the physical facts and all the facts and circumstances which are relevant to the case. If from all of the evidence the jury could reasonably find that regardless of the state of negligence of the plaintiff, the defendant, by the exercise of ordinary care, had a clear chance to save him and failed to do so, then an instruction on the doctrine is justified. In cases, such as the one here, where a defendant is required by law to keep a proper lookout, the test is not whether he actually saw the plaintiff in time to have saved him, but whether he could have seen him in time to have avoided the injury, by exercising ordinary care, and failed to do so.

"The jury could have reasonably found from the evidence that Mrs. Keeler was guilty of no actionable negligence or that if she were, then the plaintiff was guilty of either contributory or concurring negligence, which, of course, would have barred a recovery. On the other hand, they could just as reasonably have found that Mrs. Keeler was guilty of pri-

mary negligence, and that the plaintiff was guilty of no negligence which proximately and efficiently contributed to his injury; or they could have found that while the plaintiff was in a state of negligence in crossing the street diagonally between intersections without exercising proper care for his safety, Mrs. Keeler ought to have seen him in his peril, in the exercise of ordinary care, and avoided striking him with her car either by stopping it or by diverting its course. If the jury could have drawn the latter conclusion from the evidence, then the plaintiff was entitled to have the jury instructed by the court on the last clear chance."

In the case of *Roanoke Ry. & Elec. Co.* v. *Korb*, 155 Va. 296, 154 S. E. 550, 552, 553, this court held, Justice Hudgins delivering the opinion, that the evidence in that case justified an instruction on the last clear chance doctrine. The same defenses were made in that case as in the *Keeler* v. *Baumgardner Case* and the former case was therein cited with approval.

Justice Hudgins in the *Roanoke-Korb Case* cited and quoted from another case from this court as follows:

"As was stated by Judge Kelly in the case of *Virginia Ry. & Power Co.* v. *Wellons* [133 Va. 350, 122 S. E. 843], *supra:* 'If the discovery of the inevitable was made, or ought to have been made, before it was too late for him to slow down or stop, he (that is, the motorman) would have the last clear chance to avoid the injury, and the street car owner would be liable regardless of the fact that the negligent conduct of the driver of the vehicle precipitated the situation, * * * .' "

The case of *Perkinson* v. *Persons*, 164 Va. 172, 178 S. E. 682, 684, embraced facts not materially unlike those obtaining in the case before us. Justice Gregory also delivered the opinion in that case and we quote from it as follows:

"The application of the doctrine of the last clear chance was one theory upon which the plaintiff based his right to recover. The evidence justified the court in submitting an instruction on that doctrine. The testimony discloses that Perkinson could have seen Mrs. Persons standing in the street when she was still 150 feet away. The jury had the right to

conclude that if he had seen her when he should have seen her he could have avoided running over her by using his brakes which were in good condition, by reducing his speed, which he did not do until it was too late, or by seasonably turning back to his right side of the street after passing Mr. Foster's car. The jury could have reasonably concluded that he had a clear opportunity, in the exercise of ordinary care, to have taken one, or all of those precautions, and if he had, Mrs. Persons would have been saved even though she were in a state of negligence in standing in, and crossing the street. Whether Perkinson should have discovered her peril sooner than he did, and whether he had a clear chance to save her in the exercise of ordinary care were matters for the jury and by their verdict these things have been decided adversely to the plaintiff in error. Such a finding has substantial evidence to support it. Our conclusion is that the evidence in this case justified the instruction on the last clear chance doctrine."

In the above case the following cases are also cited: *Keeler v. Baumgardner*, 161 Va. 507, 171 S. E. 592, *supra; Roanoke Ry. & Elec. Co.* v. *Korb*, 155 Va. 296, 154 S. E. 550, *supra; Virginia Ry. & Power Co.* v. *Wellons*, 133 Va. 350, 112 S. E. 843.

The defendants in a very impressive brief invoke the principles enunciated by this court in the cases of *Meade* v. *Saunders*, 151 Va. 636, 642, 144 S. E. 711; *Stephen-Putney Shoe Co.* v. *Ormsby's Adm'r*, 129 Va. 297, 105 S. E. 563, and *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486, as fortifying their position that the case under consideration is not one for the application of the last clear chance doctrine.

The distinguishing differences between the first case mentioned and this case is that in that case the car and the pedestrian were traveling at right angles and their paths must cross only a few feet ahead. The pedestrian had seen the car approaching and the court said: "a collision under such circumstances can only arise as the result of the concurring or independent negligence of the plaintiff."

In the *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r Case*

the pedestrian stepped off the sidewalk into the street directly in front of a rapidly approaching automobile within a few feet of him at the time. It was held that the car or truck could not have stopped at the rate it was going in time to save him.

In the *Green-Ruffin Case*, Mrs. Ruffin saw the defendant's car but did not look again in the direction from which it was coming but walked in front of it and was struck down.

The principles announced in these cases do not conflict with or impair the strength of the cases referred to as controlling here. We think the trial court erred in setting aside the verdict of the jury in this case. As was said in the *Perkinson-Persons Case, supra,* the questions here involved are those which are peculiarly within the province of a jury for determination. We reverse the judgment of the trial court and reinstate the verdict of the jury and enter final judgment therein.

*Reversed and final judgment.*