# Richmond

## SOL CHENMAN AND L. CHENMAN V. P. W. PAXSON'S ADMINISTRATOR.

March 10, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*W. Shepherd Drewry*, for the plaintiffs in error.

*William W. Old, Jr.*, and *Rixey & Rixey*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

P. W. Paxson, who will be referred to as the plaintiff, instituted an action at law against Sol Chenman and L. Chenman, who will be designated defendants, to recover damages sustained by him when he was struck and severely injured by a car which was owned by L. Chenman and was being driven at the time by his son, Sol Chenman. A verdict of the jury fixed the damages of the plaintiff at $15,000 and it was approved by the court. Since the trial of the case in the lower court, Mr. Paxson has died and Perry E. Harris has qualified as his administrator. He is the defendant in error.

Sol Chenman was on an errand for his father and was driving his father's car north on Bank street in the city of Norfolk between three and three-thirty o'clock on the afternoon the accident occurred. Middleton Nemo was a passenger in the car. At the point of the accident the street is smooth, running north and south, is thirty-two or thirty-three feet wide from curb to curb and located in a business district. In the block on Bank street bounded on the north by Freemason street and on the south by Market street, there is a twenty foot lane, paved with cobble stones, opening into the east side of Bank street. The evidence is conflicting as to whether or not this twenty foot lane is a private or public lane. It was used by many people for the purpose of parking produce trucks and displaying their produce to the public for sale. Two automobiles were parked along the east curb of Bank street about eight feet south of the lane.

At the time of the accident there was a drizzling rain and the streets were wet. Mr. Paxson had been up in the lane looking at produce displayed there and upon his return he walked out of the lane, into Bank street approximately eight or nine feet from the eastern curb. He in-

tended to cross to the west side of Bank street. In this position, where he had a clear view of traffic approaching from the south, he stopped and looked both ways for vehicles but saw none. At this time, a boy on the sidewalk on the east side of Bank street called to him and he turned his head to the right, away from the direction from which Chenman was coming, and spoke to the boy. He stood in that position for a very short time and turned with his face to the west looking again to his left before proceeding. At this moment the Chenman car was five or six feet from him, coming at a speed described as fast. He then attempted to jump backwards but it was too late. Just before he was struck Chenman threw up his hands and turned the car to the right into Mr. Paxson. He was struck with the right side of the front bumper, knocked down and his right arm practically wrenched off just below the elbow. It was hanging by a few large tendons and, subsequently, had to be amputated. He received two long cuts in his face, in one of which twelve stitches were taken, and he was bruised and cut on one of his legs. At the time there were no cars parked in the vicinity except the two cars parked at the east curb of Bank street, south of the lane. No other traffic was going south on Bank street or in the opposite direction. There remained between Mr. Paxson and the opposite side of the street some twenty-four or twenty-five feet of unobstructed driving space.

Neither Chenman nor his passenger saw Mr. Paxson prior to the time that he was struck. The first time they saw him was after the impact when he was lying in the street.

After the car had been stopped, Mr. Chenman and Mr. Nemo got out and went to the assistance of Mr. Paxson. Mr. Paxson got up with their aid and walked to the right side of the car and with his uninjured hand, which was bloody, opened the door and got in.

There appeared to be blood and human tissue on the handle of the door and from this fact the Chenmans contended that Mr. Paxson was not hit by the front bumper of the car, but that he walked into the side of the car and

his arm was caught between the door handle and the door, and in that way he received his injuries. There is no evidence that anyone saw any blood or tissue on the door handle until after Mr. Paxson had opened the door and gotten into the car.

Several days after Mr. Paxson had been taken to the hospital the defendant, Sol Chenman, visited him and Mr. Paxson testified that on that occasion Chenman admitted "I'm the man that run over you." According to Mr. Paxson, he also stated, "I wasn't driving fast—about thirty miles an hour," and again, he stated, "We're going to take care of you." Two other patients in the hospital testified that they heard these statements made by Sol Chenman on this occasion.

The only two eyewitnesses were Mr. Paxson and a Miss Evans. Miss Evans was standing on the sidewalk on the west side of Bank street just opposite the point where the accident occurred. She testified that the car was proceeding near the center of the street and that just before it struck Mr. Paxson it was turned to the right into him and that if it had been driven straight instead of swerving to the right, Mr. Paxson would have escaped. She further testified that Sol Chenman, the driver, had his head turned and was talking to the gentleman beside him.

The jury examined the car and had a view of the scene of the accident.

The three important issues to be determined were the primary negligence of Sol Chenman; the contributory or concurring negligence of Mr. Paxson and whether Sol Chenman had a last clear chance to avoid injuring Mr. Paxson. These issues were submitted to the jury under eighteen instructions, nine of which were granted at the request of the plaintiff and nine at the request of the defendant. Nine other instructions were offered but refused.

The main assignment of error is that the plaintiff's own testimony discloses that he was guilty of contributory or concurring negligence as a matter of law. In neither the petition nor the reply brief of the plaintiffs in error do they

contend that Sol Chenman was free from primary negligence. His negligence has been clearly shown.

The law in cases of this kind is well established, but it is often difficult to apply it to the varying facts of particular cases. Generally, these cases are close and doubtful and the controlling issues should be presented to juries. The very fact that substantial doubt exists as to what would be a correct decision under the evidence renders it a fit case for a jury.

When this case is reduced to its final analysis it resolves itself into the determination of just this one controlling question: Do the facts show, as a matter of law, that the plaintiff was guilty of contributory or concurring negligence? If they do not show this, then was there sufficient evidence of a last clear chance to have avoided the injuries to the plaintiff on the part of the defendant, Sol Chenman, to carry that issue to the jury?

The verdict has established that the plaintiff was not guilty of contributory negligence and it has also established that Sol Chenman had a last clear chance to have saved the plaintiff. This finding will not be disturbed unless it is without evidence to support it or is plainly wrong.

The learned judge of the trial court in passing upon these questions had this to say:

"I have examined the authorities cited, and read the transcript of the evidence. The issue is, was the plaintiff guilty of concurring negligence or did the defendant have the last clear chance to avoid the injury?

"The plaintiff stepped out into the roadway of Bank street about eight feet, when the defendants' car was approximately at Market street 254 feet from the scene of the accident, according to the testimony of Miss Evans, proceeding rapidly north on Bank street; the plaintiff turned his head to answer the call of a boy on the east sidewalk of Bank street; he was in line of the northbound vehicular traffic, a place of danger, in clear view of defendant; plaintiff spoke to the boy, turned to continue across Bank street and found defendants' car within five or six feet of him;

tried to jump back, but it was too late and he was struck and injured. There was no southbound traffic, there was ample room for the defendant to turn his car away from the plaintiff, but instead of that he turned it towards the plaintiff. I reach the conclusion that the defendant had the last clear chance to avoid the injury. *Dobson-Peacock* v. *Curtis,* 166 Va. 550, 186 S. E. 13; *Perkinson* v. *Persons,* 164 Va. 172, 178 S. E. 682; *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592; *Bassett & Co.* v. *Wood,* 146 Va. 654, 132 S. E. 700. The isue of the last clear chance was submitted to the jury on the part of both plaintiff and defendant, and I think there is evidence to sustain this verdict."

We will not undertake to narrate in detail the evidence which we think is sufficient to support the verdict. A fair reading of the entire testimony of Mr. Paxson and that of Miss Evans will inevitably lead the impartial mind to the conclusion that Mr. Paxson was standing in the street just immediately prior to the accident, oblivious to his danger; that the defendant Sol Chenman had ample time and opportunity, if he had been keeping a proper lookout, to have stopped his car, reduced its speed or driven around Mr. Paxson, and, thus, have prevented the car's striking him. The evidence is conclusive that Sol Chenman never saw Mr. Paxson prior to driving into him, though he was visible for more than 254 feet and was standing in the street directly in the path of the automobile; and that just before the impact Chenman threw his hands up and the car turned to the right into Mr. Paxson.

We think the evidence was sufficient to submit the questions of contributory negligence and whether Sol Chenman had a last clear chance to the jury. Their finding is conclusive.

There are many Virginia cases where similar legal principles have been applied. Some of the more recent ones are: *Dobson-Peacock* v. *Curtis,* 166 Va. 550, 186 S. E. 13; *Keeler* v. *Baumgardner,* 161 Va. 507, 171 S. E. 592; *Perkinson* v. *Persons,* 164 Va. 172, 178 S. E. 682. The case nearest in point upon the facts is *Bennett* v. *Spencer,* 167 Va. 268,

189 S. E. 169. There the plaintiff's intestate was struck by an automobile owned by one of the defendants and driven by the other. He had been standing in the center of the street with his back to the approaching car. The accident occurred on a misty night after dark and the street was wet. The street lights were sufficient to have enabled the driver to have seen Mr. Bennett more than 100 feet away. The driver did not see him until she was within eight feet of him and then it was too late to avoid striking him. We held in that case that whether the driver had the last clear chance to avoid the accident was for the jury.

The defendants objected to the granting of any of the instructions offered by the plaintiff. They were of the view that the plaintiff was barred of any recovery, because, according to their contentions, he was guilty of contributory negligence. They have also made specific objections to these instructions. They offered nine instructions which were granted and there were nine refused. We will not undertake to pass upon each specific objection to the instructions, because it would add too much to the length of this opinion and serve no good purpose. Instructions were granted for both the plaintiff and defendants applying the doctrine of the last clear chance to both parties. In our opinion the instructions given embraced every theory of the case.

The multiplication of instructions results in confusing a jury. The practice of asking for a great number of instructions in cases involving few law questions, instead of aiding the jury in reaching right conclusions, tends to mislead them. In addition, this unnecessary burden should not be imposed upon trial courts. The instructions granted were as liberal to both sides as they could have been and still have been free from conflict. We have carefully read all of them,—those given and refused and those amended and given. We have considered each and every objection interposed by the defendants and we are of the opinion that the jury were correctly and sufficiently instructed.

At the trial the defendants attacked the reputation of Miss Evans, a witness for the plaintiff. She had testified that

she saw the accident from the opposite side of the street but the defendants, inferentially at least, sought to show that she was not there. The plaintiff called the witness Hollinsworth to the stand and he testified that his place of business was located just across the street from where the accident occurred. He said that he knew Miss Evans and had seen her in his place of business directly after the accident. Then this occurred:

"Q. Do you recall her saying anything about whether or not she witnessed this accident?

"Mr. Shackleford: That would be hearsay I think. I object to it.

"The Court: He is not asking him what she said. He's asking if he heard her comment on the accident, indicating that she had been there. I think that would be admissible for what it is worth—so long as he doesn't want him to give any recital of anything she said about it. Her reputation and character have been attacked, and that would be in the line of rebuttal.

"Mr. Shackleford: We note an exception on the ground that it would be hearsay.

"By Mr. Rixey:

"Q. Don't say anything that she might have said about the particulars of the accident, but tell the jury whether she said anything to indicate to your mind that she claimed to have seen the accident.

"A. Well yes.

"Q. That was the accident in which Mr. Paxson was hurt on September 3rd?

"A. Yes, sir."

 The contention is made that the witness was allowed to give hearsay testimony. We do not think he testified to anything that could be considered as hearsay. The purpose of the plaintiff was to show that Miss Evans was at the scene of the accident and in substance that was all that the witness Hollinsworth testified to. He did not testify as to any statements made by her. He simply said she claimed to have seen the accident and nothing more.

It is assigned as error that the court permitted the witness Fisher to testify as to the condition of the car without first having identified it as the car involved in the accident. The plaintiff and Miss Evans had testified that the plaintiff was struck by the front bumper of the car. The defendant claimed that he walked into the side of the car but no one testified to that fact. The car was used to take Mr. Paxson to the hospital and Fisher testified that he examined a Chevrolet, 1934, coupe, which was parked in front of the hospital between three and four o'clock in the afternoon on the day of the accident. He said that a trail of blood led from the door of the hospital, down the steps and to the car and that there was blood on the inside of the car. From this identification, the court then permitted the witness to testify that he examined the front of the car and found the license bracket and the radiator bent but that the damage was not "very severe."

We do not think the court committed reversible error in admitting this testimony. Witness Nemo who was in the car with Chenman at the time of the accident and who assisted Mr. Paxson into the hospital said that there was a trail of blood that ran from the car into the hospital. There is other evidence which makes it quite certain that the car which Fisher examined was the car involved in the accident.

Upon the whole case we are of opinion that the judgment should be affirmed.

*Affirmed.*