# Richmond

RAYMOND E. HERBERT v. T. C. STEPHENSON.

November 19, 1945.

Record No. 2943.

Present, All the Justices.

The opinion states the case.

*Robert W. Arnold, Jr.*, and *Carlton E. Holladay*, for the plaintiff in error.

*John H. Cole* and *Gholson & Gholson*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case is before us upon a writ of error awarded at the instance of Raymond E. Herbert, the plaintiff in error,

who was the plaintiff in the trial court. It grew out of an automobile accident which happened on January 18, 1943, about dawn, a few minutes past seven o'clock, in the town of Waverly, Virginia. It was in a residential district where State Highway Route 40 and Main Street of the town merge. At this point the concrete portion of the highway, or street, is 18 feet wide. Contiguous to this is a tarred strip or shoulder which slants to a small ditch or gutter. This shoulder is about 5 or 6 feet wide and the dirt gutter about 4 feet. Route 40, merged as it is with the street, extends east and west. Five feet from the south edge of the concrete is a brick sidewalk five feet wide, which begins at a point 200 feet west of the place of the accident. This sidewalk was not in very good travelable condition and it is in evidence that it was not very generally used by pedestrians. They were in the habit of using the street.

It had been raining in the early morning but had stopped. It was not foggy or misty, though there is some conflict as to this. There were two street lights in the vicinity of the place of the accident. One was 20 feet obliquely across the street from the point of impact, in a westerly direction, and the other about 100 feet similarly across the street in an easterly direction. They were both lighted at the time, though the bulbs were not of a large wattage.

The defendant, T. C. Stephenson, in company with a friend named Vaughan, was traveling in an automobile in an easterly direction *en route* from North Carolina to Williamsburg. The plaintiff was walking in the same direction, carrying his lunch, on his way to work at Camp Lee. They were both on the right hand side of the highway, the preponderance of the evidence being that the plaintiff was walking on the asphalt shoulder of the road. The defendant was overtaking him and at about the time of the impact, or collision, a truck going in the opposite direction was passing. There was nothing unusual about the truck's lights, they were not of sufficient intensity to blind one meeting the truck. It was well over on its right hand

side which is the northern part of the highway and there was plenty of room on the concrete for the Stephenson automobile to pass.

The highway is straight for half a mile in an easterly direction, the course pursued by both the plaintiff and defendant, and for 200 yards in a westerly direction, which was behind them, and it was free from obstructions of any sort.

The evidence is in conflict as to the rate of speed at which the Stephenson automobile was traveling. He and his companion testified that their speed was between 20 and 25 miles per hour and that their automobile was on the concrete portion of the highway. They state, as evidence of their moderate speed, the fact that Stephenson brought his automobile to a stop within less than its length. On the contrary, two witnesses, Jarratt and Harcum, testified that Stephenson said at the time of the accident that his speed was 30 or 35 miles per hour. They also testified that the left wheels of his car were on the concrete portion of the roadway and the right wheels were about an equal distance on the tarred shoulder.

The deputy sheriff of the county of Sussex, I. H. Fleetwood, testified that all four of the wheels of the Stephenson car were on the concrete portion of the roadway, but J. P. Laine, sergeant for the town of Waverly, corroborated the witnesses who put the automobile in the position in which the plaintiff's witnesses placed it. It is thus seen that, as to the points referred to, the evidence is quite contradictory, but there are uncontradicted physical facts which go far to take them out of the realm of speculation and place them in that of comparative certainty. They are these: There was mud or dirt underneath the car on the concrete portion of the street that appeared to have been dropped from the fenders when it came in contact with some object in the road and there was also broken headlight glass under the car; the mud indicating that the vehicle had been on soft earth again, the glass in the right hand light was broken, the right hand portion of the bumper was

bent and the right hand part of the radiator grill was bent, this tending to show that the force of the impact was received on the extreme right portion of the automobile. Again, the testimony is preponderant that the plaintiff was lying in the gutter after the accident, which was five or six feet from the concrete part of the roadway. The significance of the latter is that if the plaintiff had been three steps on the concrete, at the time of the collision, where the defendant placed him, he must have been knocked a distance of nine feet to the gutter where he was lying, which seems unlikely. Again, we have the important fact that the plaintiff was struck in the back, not on the side. The attending physician, Dr. Jennings, testified that he suffered an injury to his left shoulder and fractures of the lower "vertebra" of his back, two broken ribs and a punctured lung and a cut under his left shoulder on his back, as well as a cut on the right side of his face. The pertinence of this is readily seen.

Of quite as important probative value is the fact that his arms, knees and legs were injured and that the hospital nurses picked particles of tar and tarred gravel out of his knees and elbows, tending to show, of course, that he must have been knocked down on the portion of the roadway which contained these materials.

The witness, Jarratt, testified that he was riding his bicycle, at the time of the accident, and recognized the plaintiff when he was 200 yards from him. This, of course, shows the state of visibility at the time.

The verdict of the jury was for the plaintiff, fixing the damages at $500. It was in evidence that his medical and hospital expenses were around $800. The plaintiff moved the court to sustain the verdict of the jury as to the matter of liability but to order a new trial on the question of damages on account of the inadequacy of the amount of the verdict. The defendant moved the court to set aside the verdict, *in toto*, as contrary to the law and the evidence. The court sustained the defendant's motion.

The plaintiff's assignments of error are based upon the instructions of the court, the legality of certain of them being assailed, and error alleged as to certain of those refused.

The *gravamen* of the contention is that the court declined to give an instruction putting the case before the jury on the doctrine of the last clear chance. This rule of law has long been imbedded in the judicature of this State; it is firmly engrafted upon our law.

The state of facts which we have related seems to us to present a situation which is quite appropriate for its application. Indeed, we think the factual situation not only justified but demanded its invocation whether, under all the circumstances of the case, the defendant, in the exercise of the care incumbent upon him, saw or should have seen, the plaintiff in time to have avoided striking him, was for the jury after being properly instructed. Conceding the continuing negligence of the plaintiff in walking on the wrong side of the roadway, still he can recover, if the defendant had the last clear chance to avert the injury and failed to avail himself of it.

In *Barnes* v. *Ashworth*, 154 Va. 218, 242, 153 S. E. 711, this was said:

"However, in Virginia, and in some other States, the doctrine of the last clear chance has been extended much further and the rule is applied (1) to that class of cases in which the peril of the plaintiff was actually known to the defendant or ought to have been known to him from facts and circumstances brought home to his knowledge, and (2) to that class of cases in which the defendant owes to the plaintiff a duty to keep a reasonably careful lookout, commensurate with the nature of the agency he is using or operating and the nature of the locality, and by the exercise of ordinary care ought to have seen or known of the plaintiff's perilous situation in time to have avoided the injury by the exercise of ordinary care."

In *Dobson-Peacock* v. *Curtis*, 166 Va. 550, 186 S. E. 13, it was said:

" * * * * We should bear in mind that a defendant is liable under the last clear chance doctrine both where he actually sees the peril of the plaintiff and fails to exercise ordinary care to avert the injury, and also where the defendant being under a duty to keep a proper lookout for the plaintiff, by the exercise of ordinary care, should have seen the plaintiff's peril in time to have avoided the injury by the use of ordinary care."

Stephenson testified that he first saw the plaintiff when he was within six feet of him. It will be noted that he had been traveling on a straight line of road for 200 yards in the direction of the plaintiff and if he were looking in that direction, as it was his bounden legal duty, there was nothing to prevent his seeing him. There was no intervening obstruction. Whether he should have seen him and whether it was negligence not to have done so were jury questions.

*Parker* v. *Norfolk Orange Crush Bottling Co.*, 175 Va. 249, 8 S. E. (2d) 301.

In the case just cited it was said: "A careful examination of all the evidence convinces us that it was sufficient to carry the case to the jury on the doctrine of the last clear chance."

See also, *Gregory* v. *Daniel*, 173 Va. 442, 4 S. E. (2d) 786.

In the case of *Bennett* v. *Spencer*, 167 Va. 268, 189 S. E. 169, the facts of which were not similar in all respects to those here, the principles are much in point. It was there said: " * * * It is perfectly patent from evidence that the deceased never saw Miss Spencer's car. * * *

"It is equally clear that Miss Spencer could not have kept the lookout that the law required of her * * * .

"It may be conceded that the deceased was in a continuous state of contributory negligence, but he was visible for a considerable distance and had Miss Spencer been looking, as was her bounden legal duty, she should have avoided the accident. It is plain to see that this is a case for the application of the last clear chance doctrine."

See also, *Keeler* v. *Baumgardner*, 161 Va. 507, 171 S. E. 592.

We are not impressed with the statement of the defendant that after he saw the plaintiff six feet from him he took three steps from a safe place on the asphalt shoulder and came in front of defendant's car. If the defendant's estimate of his speed, from 20 to 25 miles per hour, be accepted, it would be impossible for a pedestrian to turn and make three steps while the automobile was going six feet.

Instruction No. C is objected to by the plaintiff, some of which objections are well taken. It is a finding instruction and leaves out of view any reference to the last clear chance doctrine. This evil might have been obviated if the jury had been told that under the detailed incidents the plaintiff was guilty of contributory negligence rather than ending with the following: " * * and there can be no recovery in this action."

It is urged further that it was error for the jury to be told that roadbeds of the highway are primarily intended for vehicular traffic. We think that is not subject to criticism. Primary use does not mean sole use.

Instruction No. E, which is assailed, we think is correct. It is simply a statement of the law from the standpoint of the defendant's evidence to which he was entitled.

Instruction No. A is a general statement of the law and would not have been subject to a successful attack if an instruction had been given on the doctrine of the last clear chance.

We think instruction No. F is objectionable because it assumes that the driver of the automobile was "temporarily blinded" by the lights on the truck, whereas the defendant himself said that his vision was obscured only "to some extent."

We think that instructions Nos. G and H are unobjectionable from the standpoint of the defendant's evidence.

The manifest error, in our opinion, was the failure of the court to give an instruction embodying the principles of

the last clear chance doctrine. We think the jury was entitled to this upon both issues of liability and damage.

The judgment of the court is reversed and the case is remanded for a trial *de novo* to be had not inconsistent with this opinion.

*Reversed and remanded.*