# 𝔚𝔭𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## J. A. CLAY AND W. T. CLAY, PARTNERS TRADING AS BLACKSTONE PRODUCE COMPANY, ET AL. v. A. COLES BISHOP, ADMINISTRATOR D. B. N. OF THE ESTATE OF JOHN ALFRED BISHOP, DECEASED.

June 22, 1944.

Record No. 2771.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*W. Moncure Gravatt* and *Morton G. Goode*, for the plaintiffs in error.

*W. Potter Sterne* and *William Earle White*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

John Alfred Bishop, a farmer, 'while walking eastwardly' along the highway, leading a horse by the bridle, was killed when a truck owned by J. A. Clay and W. T. Clay, partners trading as Blackstone Produce Company, and driven by their servant, a colored man named Ashton Bowser, in the same direction in which Bishop was going, ran into the horse which in turn ran into or was thrown upon Bishop. In an action for unlawful death Bishop's administrator recovered a verdict of $5,000 against the Clay partners, upon which the trial court entered judgment. This judgment is before us on a writ of error granted the Clays, whose main contentions are, (1) that the verdict is not supported by the

evidence, and (2) that the lower court erred in submitting the case to the jury under the last clear chance doctrine.

The accident occurred in the early afternoon of December 30, 1940, on Highway No. 460, near Poole's Siding in Dinwiddie county. At the point of the collision the road is straight for a distance of between six and nine hundred feet, extending from the top of a knoll to the west to an underpass to the east. The traveled portion of the highway is about twenty-two feet wide, is covered with tar, and is divided into two lanes by a white line painted along the center. On the southern side of the road is a dirt shoulder about three or four feet wide which slopes gently into a shallow ditch. Just beyond and to the south of the ditch is an eighteen-inch embankment along which runs a barbed wire fence. The distance from this fence to the edge of the tarred surface of the road is estimated by the witnesses at from four to five feet.

The evidence is undisputed that at the moment of the collision, and for some time prior thereto, Bishop had been walking eastwardly along the highway on the dirt shoulder on the southern or his right-hand side of the road, leading the horse by the bridle. The Clay truck, carrying a load of furniture, was likewise proceeding in an eastwardly direction. The vehicle was a 1940 V-8 truck and trailer. The trailer was equipped with dual wheels and a frame body.

As the truck came over the hill and started down the slight grade toward the underpass, Bishop and the horse were plainly visible to Bowser, the driver of the truck, on the straight stretch of road, on which there was no other traffic. Bowser testified that he saw Bishop walking along the southern or right-hand shoulder, followed by the horse which was likewise entirely off the paved surface of the road. According to Bowser's story, he was driving around thirty miles per hour, and just before coming abreast of the horse slowed down to twenty or twenty-five miles per hour and "pulled to the left" for the purpose of passing. All went well until he was about seven or eight feet from the horse when suddenly it became "excited" and "whirled right

around" and backed into the right front fender of the truck. The front of the trailer then struck the "rump and tail" of the horse. Bowser further testified that no part of the truck hit Bishop, who, at the moment the vehicle struck the horse, was "over in the edge of the ditch." According to Bowser, he brought his truck to a stop within a few feet and found Bishop lying unconscious in the ditch. The horse in the meantime, he said, had broken through the barbed wire fence and was running across an adjacent field.

Bowser was accompanied by a small boy who lived in Baltimore and seems not to have been available as a witness. There were no other eyewitnesses to the collision.

The accident occurred within a short distance of Williams' Garage and in a few minutes a number of persons were on the scene. Bishop was found lying on his back in the ditch on the southern side of the road, with his feet toward the pavement and his head toward the fence on the right. While Bowser testified that his truck never left the tarred surface, several witnesses, including Dr. Mayes, a reputable physician who lived in the community, testified that they saw fresh marks made by the dual wheels of a truck on the dirt shoulder at the point of the collision. These marks indicated that the truck had run off the paved portion of the road on its right and then pulled to the left at the point of the collision. According to witnesses for the administrator, the tracks made by the horse were plainly visible on the dirt shoulder leading down to the point of the collision. Here the ground was, as some of the witnesses described it, "dug up" or "scuffed," and indicated that the horse, while walking on the dirt shoulder, had been struck in the rear and "pushed forward."

The left rear leg of the horse was bruised just above the hock and its tail was broken. Several witnesses ascribed these injuries to the collision. It sustained other minor injuries due to its contact with the fence.

The right front fender of the truck was bent down over the wheel, and hair from the horse's tail was found on the right front corner of the body of the trailer.

If the accident happened in the manner described by Bowser,—that is, when the front of the truck was only a few feet from the horse, the latter, without warning, suddenly whirled to the right and backed into the right front fender of the truck,—the driver was free of negligence, and the court so instructed the jury. But it is manifest from the verdict that the jury did not accept this version of the accident.

On the other hand, if, while Bishop and the horse were walking in plain view on the shoulder, entirely off the paved portion of the road, leaving ample room for the truck to have safely passed them, the right wheels of the truck ran off the pavement onto the shoulder and struck the rear of the horse, then the jury had the right to infer that Bowser was not keeping a proper lookout and was guilty of negligence in not avoiding the collision.

█ In our opinion, there was sufficient evidence to warrant the jury in not accepting Bowser's account of how the tragedy occurred and in finding that it happened in the manner in which we have last indicated. ·

The testimony of Dr. Mayes, and that of the other witnesses to which we have referred, indicated that, contrary to Bowser's story, the truck ran off the paved portion of the road on the right and struck the horse while the latter was walking along the dirt shoulder. True it is that there is a conflict in the evidence as to these marks on the shoulder. Some of the witnesses did not observe them, while others even testified that they were not there. But the jury's verdict, has of course, settled this conflict in favor of the decedent. It is significant, too, that there was no evidence of any marks on the tarred surface to indicate that the collision occurred there, as Bowser claimed.

There are other circumstances which warranted the jury in discrediting Bowser's story. When interviewed by Mason, a member of the State police, who arrived on the scene shortly after the accident, Bowser first said that Bishop was riding the horse. At the trial, while he admitted that he may have made this statement, he said it was a mistake and

that Bishop was, in fact, leading the animal. Again, Bowser was unable to say what happened to Bishop and how he was injured other than that he was not hit by any portion of the truck. Evidently Bowser did not see Bishop from the time the truck first hit the horse until after the vehicle had been brought to a stop. In the meantime the horse had gone through the fence and Bishop was lying unconscious in the ditch.

Then, too, the fact that the horse was struck on the left hind leg and on the rump at the tail, would indicate that the blow came directly from the rear and was not inflicted in the manner related by the driver.

Bowser further testified that he brought the truck to a stop with the rear of the trailer just beyond the point where Bishop lay, but Mason, the State traffic officer, found that the rear of the trailer was thirty-eight steps, or approximately 114 feet, beyond the point where Bishop was lying. While Bowser testified that he had moved the truck between the time of the collision and the time the officer arrived, he was contradicted as to this by Williams, one of the first to reach the scene of the accident.

It is claimed that Bishop was guilty of contributory negligence, as a matter of law, in that he was walking on the right-hand side of the highway instead of on the left-hand side, as required by subsection (f) of section 79 of the Motor Vehicle Code. Acts 1932, ch. 342, pp. 613, 656; Michie's Code of 1942, section 2154 (126) (f).

We need not stop to consider whether this statute applies to one who is leading a horse or other animal along the highway. Even if it be assumed that the statute does apply, and that its violation was negligence *per se*, yet it was for the jury to say whether such violation was a remote cause and the negligence of the driver was the proximate cause of the accident. This question the jury has resolved in favor of the decedent. See *Gregory v. Daniel*, 173 Va. 442, 4 S. E. (2d) 786; *Parker v. Norfolk Orange Crush Bottling Co.*, 175 Va. 249, 8 S. E. (2d) 301.

The final contention of the plaintiffs in error is that the lower court erred in submitting to the jury whether the driver of the truck had a last clear chance to avoid the accident. It is argued that according to Bowser's testimony the horse did not become excited until the truck was in close proximity to it, that it then suddenly whirled and backed into the fender of the truck, and that in this situation the driver did not have a sufficient warning or interval of time within which to have avoided the accident.

The answer to this argument is that the last clear chance instruction was not designed to meet the driver's version of the accident, which the jury has not accepted. The plaintiffs in error contended in the trial below, as they did in the argument before us, that Bishop placed himself in a position of great danger and was guilty of negligence, as a matter of law, in leading the horse on the right-hand side of the highway instead of on the left, as required by the statute. For example, in their brief they say: "We submit that not only was Mr. Bishop guilty of simple negligence, but that his negligence in leading the horse along the shoulder of the road, on the right-hand side, at the point of the accident, where the distance between the hard surface and the bank, upon which had been erected a barbed wire fence, placed him in a hazardous position, and made his chances of escape, in the event of trouble, most difficult, and convicted him, not only of simple negligence, but of gross negligence." Moreover, at the request of the plaintiffs in error the lower court, over the objection of the administrator, instructed the jury that Bishop was guilty of negligence, as a matter of law, in walking on the right-hand shoulder of the road.

Manifestly, the last clear chance instruction was designed to meet this situation and to submit to the jury whether, notwithstanding the negligence of Bishop in leading the horse on the wrong side of the highway, as found by the court, and exposing himself to danger, this situation was obvious to the driver (who admits that it was), and whether the driver, by the exercise of ordinary care, could have avoided injuring him. Clearly the lower court was right in

submitting this issue to the jury. See *Gregory* v. *Daniel, supra; Parker* v. *Norfolk Orange Crush Bottling Co., supra; Bennett* v. *Spencer,* 167 Va. 268, 189 S. E. 169.

Complaint is made of the refusal of the court to give certain instructions requested by the plaintiffs in error. It is unnecessary that we review these contentions in detail. Suffice it to say that the theory of the plaintiffs in error was fully and adequately presented to the jury by the other instructions granted at their request.

We find no error in the record and the judgment is

*Affirmed.*