**Frederick N. LANGE, Plaintiff,**

v.

**Mary Louise BURRUSS, Defendant.**

**Civ. A. No. 75–69–NN.**

United States District Court,
E. D. Virginia,
Newport News Division.

Feb. 17, 1970.

Daniel W. Wilkinson, Jr., Newport News, Va., for defendant.

## OPINION AND ORDER

KELLAM, District Judge.

On August 12, 1968, plaintiff was returning to the home of his daughter on Burns Lane, Williamsburg, Virginia, where he was visiting. Burns Lane runs approximately north and south, is a two way street, about 30 feet wide, and parking is permitted on each side. Plaintiff drove his Volkswagen transporter (camper bus) south along Burns Lane and stopped near the curb on the east side [his left side], with the intention of driving it in the driveway and garage, after he had opened the garage doors. After going to the garage he remembered he wanted to use the Volkswagen later in the day, and so returned to turn off the ignition switch. After looking in each direction and determining no traffic was approaching, he went to the right side of the Volkswagen [the side away from the curb], opened the door, and while standing on the ground with the door resting against his body, leaned into and across the front seat and turned off the ignition switch. This door was hinged at its front or forward position, and swung out or opened towards the front of the wagon. While standing in this position, with the door partly open, the door was struck by the defendant's automobile. Immediately before the accident, defendant left her home driving north on Burns Lane. She lived about two blocks from the scene of the accident. Before reaching the position of plaintiff's wagon, she crossed Powell Street—just about 100 feet south of where plaintiff's wagon was stopped. The damage to defendant's vehicle was a small dent in the right headlight rim and/or a dent in the bumper, while plaintiff's wagon had a four inch dent in the right door.

The day was clear; the street was dry, straight, level, and without defects. No other vehicles were parked on Burns Lane, at or near the scene, and there

Walter H. Emroch, Richmond, Va., for plaintiff.

were no objects to block defendant's view. The distance between the Volkswagen and the west curb of the street was approximately 24 feet. Defendant said she heard a noise, and did not realize she had struck the Volkswagen until her car had passed it. Just a short time prior to the striking, defendant said she had momentarily taken her eyes off of the street. The police officer who investigated the accident testified defendant told him she had leaned over to pick up something and failed to see plaintiff.

Section 46.1–248 of the Code of Virginia, 1950, as amended, provides that except on one-way streets, and conditions not existing here, "No vehicle shall be stopped except close to and parallel to the right-hand edge of the curb or roadway." As was said in Baxley v. Fischer, 204 Va. 792, 134 S.E.2d 291, 295, "A violation of a statute such as 46.1–248 is negligence per se, but such negligence will not support a recovery for damages unless the violation was a proximate cause of the injury." See also Crouse v. Pugh, 188 Va. 156, 49 S.E.2d 421, 427; Clay v. Bishop, 182 Va. 746, 30 S.E.2d 585, 588; Smith v. New Dixie Lines, 201 Va. 466, 111 S.E.2d 434, 437.

 Failure of the operator of an automobile to keep a proper lookout is negligence. A proper lookout requires not only the act of looking with reasonable care, but reasonably prudent action to avoid the danger which a proper lookout would disclose. A driver who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep any lookout. Richmond Greyhound Lines, Inc. v. Brown, 203 Va. 950, 128 S.E.2d 267; Matthews v. Hicks, 197 Va. 112, 87 S.E. 2d 629, 631. In Matthews v. Hicks, supra, the Court said:

If the driver of a vehicle looks and does not see what a reasonably prudent person would have seen under the circumstances in time to take the necessary precautions to avoid danger, he is just as guilty of negligence as if he fails to maintain any lookout.

And in Von Roy v. Whitescarver, 197 Va. 384, 89 S.E.2d 346, it was said:

A driver of a motor vehicle is under the absolute duty to see an oncoming vehicle which is in such plain view that looking with reasonable care he is bound to have seen it. Oliver v. Forsyth, 190 Va. 710, 716, 58 S.E.2d 49, 51; Hobbs v. Thorns, 195 Va. 639, 645, 79 S.E.2d 854, 857; Yellow Cab Co. v. Eden, 178 Va. 325, 341, 16 S.E. 2d 625; Perry v. Thompson, supra [196 Va. 817, 86 S.E.2d 35].

"The duty of looking is based on the wisdom of seeing whether traffic is approaching, where and at what speed. If looking discloses approaching traffic, then the right to proceed is to be tested by whether a person of ordinary prudence would attempt it. Rhoades v. Meadows, 189 Va. 558, 562, 54 S.E.2d 123, 125. *But if a person having a duty to look 'carelessly undertakes to cross without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law.'*" Hopson v. Goolsby, 196 Va. 832, 86 S.E.2d 149, 153. See also Nehi Bottling Co. v. Lambert, 196 Va. 949, 86 S.E.2d 156.

 The real issue here is what was the proximate cause of the accident. "The violation of a statute, of itself does not necessarily constitute such negligence as will establish the existence of the principle of proximate cause." Speer v. Kellam Adm'r, 204 Va. 893, 134 S.E.2d 300, 304. While a violation of a statute or breach of a duty imposed by law may amount to negligence, the issue is whether or not "such violation be a *remote cause or the cause which proximately contributes* to the injury." Speer v. Kellam Adm'r, supra. This is a question for the fact finder. Speer v. Kellam Adm'r, supra; Crouse v. Pugh, 188 Va. 156, 49 S.E.2d 421, 427; Clay v. Bishop, 182 Va. 746, 30 S.E.2d 585, 588; Smith v. New Dixie Lines, 201 Va. 466, 111 S.E.2d 434, 437. Hence, the ques-

tion is whether the alleged negligence of plaintiff in parking his car on the left hand side of a two way street, and going to the side of the car away from the curb to enter the vehicle was a proximate or remote cause of the accident; and whether the alleged negligence of defendant in failing to maintain a proper lookout was a proximate cause of the accident.

The stopping of the car at the left curb was a remote cause. Plaintiff would not have been guilty of any negligence if he had stopped his car in the exact same spot, if it had been facing in the opposite direction. Whether the front or rear of the wagon was facing south could have made no difference. With this vehicle, the front and back are similar looking. Neither was the act of plaintiff in entering the vehicle on the right hand side a proximate cause. With nothing to block the view of defendant and a distance of 24 feet between plaintiff's vehicle and the west curb, she had only to drive a reasonable distance to her left to avoid the accident. This she failed to do. A proper lookout would have disclosed the door of the wagon was open and that plaintiff was standing behind it.

I am convinced that any negligence on the part of plaintiff was a remote cause of the accident, and that the negligence of defendant was a proximate cause. Hence, plaintiff is entitled to recover.

 Following the accident, plaintiff was taken to the office of Dr. Bell in Williamsburg for treatment. He complained of pain in the back of the neck which extended into the shoulder and over the left temple, and had a scratch over the forehead. Dr. Bell reported that upon examination he found a contusion on plaintiff's head, requiring no sutures. He diagnosed the injury as a sprain of the neck which would have four to eight weeks duration. X-rays taken were normal, except for some pre-existing arthritis. He was seen again

August 14th and 21st. He felt plaintiff would fully recover in the usual manner.

Soon after the accident plaintiff drove from Williamsburg to Arizona. There he complained of pain in his neck, and dizzy or blackout spells. He was seen on September 9th and 11th, 1968, by Dr. Elgin L. Schlack, and from September 19th through November 21st, 1968, he was seen a total of seven times by Dr. Robert S. Keller. No evidence of the treatment or findings of either of these doctors has been presented. On November 14th, 1968, plaintiff was examined by Dr. Egon Johnson, an orthopedic surgeon. He was seen again on February 13th and December 4th, 1969, by Dr. Johnson. He said plaintiff had a pre-existing degenerative arthritic condition of his spine and that in his opinion plaintiff "sustained an aggravation of this arthritis." He did not know whether the arthritis would get worse, or how long he would have symptoms, as it "cannot be predicted at this time."

Plaintiff was examined by Dr. Laurie E. Rennie, a neurologist of Richmond, Virginia, on October 8th, November 11, 1969, and again on January 19, 1970, three days before trial. Dr. Rennie felt he was suffering from "seizure disorder, probably of temporal lobe origin." He felt this was permanent.

While plaintiff complains of "blackout spells," he has continued to drive his automobile. In October and the first part of November, he drove from Jacksonville, Florida, to Sarasota, Florida, and from Sarasota to Williamsburg alone.

His out-of-pocket medical expenses amount to $387.79. He lost no time from employment, and, from the evidence, the injury has not restricted his activities to any great degree.

Under the evidence, I am of the opinion $8,000.00 would be a just and fair sum as compensation for the injuries sustained, and judgment for that sum is accordingly entered.