# Staunton

## MARY E. CATRON, ADMINISTRATRIX, ETC. V. W. V. BIRCHFIELD.

September 22, 1932.

Present, Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Thomas F. Walker,* for the plaintiff in error.

*S. B. Campbell* and *George P. Young,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Joseph E. Catron was killed by an automobile driven by Mrs. W. V. Birchfield on the Lee highway just west of

the town of Wytheville on the night of December 27, 1929, about 8:30 o'clock. W. V. Birchfield, the husband of Mrs. Birchfield and the owner of the automobile, was riding therein at the time Catron met his death. This action was instituted by Mrs. Catron as administratrix against W. V. Birchfield, and after the plaintiff had concluded her evidence, the defendant moved to strike out all of the evidence, assigning the grounds of the motion. Whereupon the trial court sustained the motion, struck out all of the evidence and practically directed a verdict in favor of the defendant. The jury, accordingly, returned a verdict for the defendant which was approved by the trial court.

The sole question to be decided is whether the trial court committed error in sustaining the motion striking out all of the evidence of the plaintiff.

It will not be necessary to recite all of the evidence in detail. A discussion of the testimony, which is favorable to the plaintiff's case, will be sufficient to determine the correctness of the ruling of the trial court.

The Lee highway runs practically east and west at and near the point where the accident occurred. The hard surface of the road is about eighteen feet in width and there are gravel shoulders on each side about two feet in width. There is a slight curve in the road, bearing to the left, when one is traveling in a westerly direction, and there is a slight hill at or near the point where the accident occurred. Mrs. Birchfield was driving in a westerly direction. A Ford car, being driven by George Weston in a westerly direction, and in which A. T. Hairston was riding as a passenger, was overtaken and passed by the Birchfield car. Weston was driving at the rate of thirty miles per hour and in order for the Birchfield car to pass the Ford car, it necessarily must have been driven at a greater rate of speed. The night was dark and the ground was covered with a light snow, which had been entirely cleared from the road except on the extreme sides. Hairston testified that just as the Birchfield car passed the Ford car in which he was riding he "spied

a man" some thirty or forty yards down the road ahead of the Ford car; that the man (who afterwards was identified as Joseph E. Catron) was on the north side of the road, near the edge of the hard surface. He said: "I spied the walking man facing the light and when this car (the Birchfield car) cut and got straight in front of us I did not see the man any more * * *." He further testified that he saw the man by the lights of the Birchfield car, "walking down the road facing the lights" and that "he seemed to be in the act of coming this way." Hairston was asked if the man was walking along "ordinarily" and he replied, "To be sure, he looked to be that way." Again he was asked, "Just walking on down the road in an ordinary way" and his reply was "Yes, sir." Again he was asked, "You saw him by the lights of the other car" (Birchfield car) and he replied "Yes, sir."

The man who was seen by Hairston was Joseph E. Catron the husband of the plaintiff in error. After the accident, the body of Catron was examined and it was disclosed that there were two bruises on the front of each leg, about the size and character, and of the approximate length, to have been made by the front bumper of an automobile, if he had been facing the automobile. Of course, there were other wounds and bruises, but we deem it unnecessary to describe them.

The windshield of the Birchfield car was very dirty and covered with mud and muddy water to such an extent that it became necessary, when the car was being pulled to Wytheville, a short time after the accident, for the person guiding the car, to stop and wipe the windshield in order to secure a better vision through it.

Catron had been drinking several hours before the accident and Mrs. Catron testified that just before he left home on the night in question "he knew everything he was doing, he wasn't intoxicated very much, he could attend to business."

For the purpose of determining whether the trial

court committed error in striking the evidence, it will not be necessary to recite the other evidence which was introduced. The defendant denied all negligence and asserted that the deceased met his death through his own contributory negligence. Counsel for the defendant has strenuously argued these two propositions in order to sustain the judgment of the trial court. But upon the present appeal it is only nceessary to determine whether the evidence of the plaintiff, which we have reviewed, would have been sufficient to have sustained a verdict in her favor. Catron, according to Hairston's testimony, was lawfully walking upon the highway. He was walking as "near as reasonably possible to the extreme left side or edge of same." (Code, section 2145(73), subd. h.) If Hairston's testimony be true (and that is for the jury), it would be sufficient to sustain a finding that Catron was not guilty of contributory negligence. The testimony, if believed, would support a finding that the windshield of the Birchfield car was not sufficiently clean, so that a clear vision ahead could be had by the driver; that if Hairston could have seen Catron by the lights of the Birchfield car, then the driver of that car should have seen him, and that the failure on the part of the driver of the Birchfield car to see Catron and to keep a proper lookout was the proximate cause of his death. A verdict for the plaintiff, based on such finding, from the testimony referred to, would be sufficiently supported and could not be set aside on the ground that it was without evidence to support it.

The legal rule controliing a motion to strike out all of the evidence is clearly stated in the case of *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282, 283, where it is said:

"It is now settled in Virginia that a motion to strike out all the plaintiff's evidence may be used wherever a demurrer to the evidence by the defendant will lie, or it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it. *Davis* v. *Rodgers,* 139 Va. 618, 124

S. E. 408; *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711; *Barksdale, Adm'r* v. *Southern Ry. Co.*, 152 Va. 604, 148 S. E. 683; *Hentz* v. *Wallace's Adm'r*, 153 Va. 437, 150 S. E. 389. See, also, *Limbaugh* v. *Commonwealth*, 149 Va. 383, 140 S. E. 133, 135.

■■ "A motion to strike out all the evidence of the adverse party is very far reaching and should never be entertained where it does not plainly appear that the trial court would be compelled to set aside any verdict for the party whose evidence it is sought to strike out. A motion to strike out all the plaintiff's evidence is closely analogous to a demurrer to the evidence by the defendant; but with this important difference,. that upon an adverse ruling by the court the defendant is entitled to have submitted to the jury both the question of the plaintiff's right to recover and the measure of recovery, while a demurrer to the evidence finally takes away from the jury all consideration of the plaintiff's right of recovery and submits it to the court.

■ "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason. *Dove Co.* v. *New River Coal Co.*, 150 Va. 796, 143 S. E. 317; *Limbaugh* v. *Commonwealth*, 149 Va. 393, 140 S. E. 133, 135; *Goshen Furnace Corp.* v. *Tolley's Adm'r*, 134 Va. 404, 114 S. E. 728."

The case of *Green* v. *Smith* is controlling here and when we apply the rules there announced to the evidence in this case we are of opinion that the trial court erred in striking out the plaintiff's evidence and that the plaintiff was entitled to have the jury consider and pass upon the testimony which was introduced.

■

The verdict will be set aside, the judgment reversed and the case is remanded for a new trial.

*Reversed.*

EPES, J., dissenting:

I concur in what the court states to be the rule as to how the evidence is to be considered on a motion to strike out the plaintiff's evidence, made at the conclusion of the plaintiff's evidence in chief. See *Green* v. *Smith*, 153 Va. 675, 151 S. E. 282, and *Jones* v. *Hanbury*, 158 Va. 842, 164 S. E. 545, 546. But I am of opinion that when the evidence in this case is viewed as upon a demurrer to the evidence, it leaves it purely conjectural as to whether there was any act of negligence on the part of the defendant which had any causal connection with the death of Joseph E. Catron; while, on the other hand, there is much evidence which tends strongly to show that the decedent was guilty of negligence which at least contributed to causing his death. Perhaps there was some evidence which tends to show that it was *possible* that the defendant *may* have been guilty of negligence which caused or contributed to the causing of Catron's death, but such evidence is, I think, insufficient to take the question of whether the defendant was guilty of negligence which caused or contributed to causing the death of Catron out of the realm of conjecture and speculation, and warrant an inference that the defendant *was* guilty of such negligence.

The fact that the evidence is to be considered as on a demurrer to the evidence does not entitle a plaintiff to recover on a mere conjecture, guess, or speculation. The burden still rests upon the plaintiff to establish affirmatively both that the defendant was guilty of negligence and that such negligence was the proximate cause of the injury complained of. If, when the evidence is so considered, the facts which may be properly considered as established thereby are as consistent with the lack of causative negligence on the part of the defendant as with the presence

of such negligence, or are only sufficient to show that it was merely *possible* that there *may* have been such negligence on the part of the defendant, it is insufficient to support a verdict.

It is pertinent to keep in mind that all the evidence which was introduced was introduced by the plaintiff, and there is certain evidence in the rceord, in addition to that which is mentioned in the opinion of the court, which I think should be considered. That my view of this case may be better understood, I shall call attention to a part of this, and also quote at length all the evidence of the negro, A. T. Hairston, which bears on the question of the liability of the defendant.

In the snow along the north side of the road were the tracks of a man walking east. The tracks left the north edge of the part of the roadway that had been cleared of snow, then ran practically straight eastwardly along the side of the road in the snow for a distance which the several witnesses estimate to be from fifteen to thirty feet, and then turned back to the part of the roadway which had been cleared of snow. Almost opposite to where these tracks come back into the road were found some "chunks" of mud which had been knocked off a car and the most easterly blood spot; and a little farther west (from six to fifteen feet according to the estimates of the several witnesses) Catron's hat was found over against the fence which runs along the north side of the road. The mud and the blood spot were in the road on that portion of it which is hard surfaced, and to the right of the center of it. There was a "string" of blood spots from this most easterly spot to where Catron's body was lying when it was first seen by any of the witnesses. This "string" of blood spots ran along the hard-surfaced part of the road about two feet from the north side thereof. These facts are testified to by several of plaintiff's witnesses, and are denied by no one.

Douglas Humphreys, who was the first person to arrive at the scene after the accident, testifies on cross-examina-

tion that Mrs. Birchfield flagged him as he came driving by, and when he stopped and came back to where she was, she said to him that she had killed a man; that he had stepped out in the road right in front of her car; and that she tried her best to avoid it, but could not help it.

The only other testimony which tends to show where Catron was at the time of and just prior to the accident is that of the negro Hairston. The material parts of this negro's testimony is as follows:

"A. * * * When the car ran around in front of our car I spied a man.

"Q. How far down the road in front of you was the man you saw?

"A. Something in the neighborhood of thirty or forty yards off.

"Q. Which side of the road was the man on?

"A. He was on the north side of the road * * *.

"Q. Did you get a clear view of the man?

"A. Yes, sir, it was just a glance.

"Q. Which way was he facing?

"A. He was facing this way.

"Q. What did the car that ran around you do?

"A. When the car ran around the car I was in he kept around like that (indicating) and then swung to his left.

* * * * * * * * *

"Q. What did the car you were in do when this car slowed down and stopped?

"A. When this car cut around us and made that left hand cut the car I was in cut back on the ball of the road like and when this car slowed down and stopped, this car I was in just kept beating it.

* * * * * * * * *

"Q. Did you see this man knocked down in the road?

"A. No, sir.

"Q. What did this man do that you saw in the road?

"A. When this car ran around in front of us I spied the walking man facing the light and when this car cut

and got straight in front of us I did not see the man any more, and the car I was in pulled over on the ball of the road like and there he stayed.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. Whereabouts in the road was this man that you saw?

"A. He was out on the berm of the road like that.

"Q. You mean by the berm of the road, he was out off the hard surface on the shoulder of the road, wasn't he?

"A. No, sir, the berm of the road runs down like this (indicating).

"Q. What is the berm of the road?

"A. It runs down slanting like that (indicating), and from there is dirt and from here on down is concrete.

\*      \*    .  \*      \*      \*      \*      \*      \*      \*

"Q. I want to know what a berm is, what is a berm?

"A. What we always call the berm is outside of the rock.

"Q. That is what I thought, outside of the rock, out on the dirt.

"A. He wasn't out on the dirt, but he was down here on the edge of the rock.

"Q. Is the berm the edge of the rock or dirt?

"A. The edge of the rock is what we always call the berm.

"Q. How much of the rock is the berm; you mean the line the rock makes when it meets the dirt, is that what you call the berm?

"A. Yes, sir.

"Q. Was this man on the rock or on the dirt?

"A. He seemed to be on the rock.

"Q. There on the rock and he was looking towards the two cars that were coming along?

"A. Yes, sir, facing them.

"Q. What was he doing?

"A. When I saw him by the light he looked like he was in the act of coming this way.

"Q. Walking down the road facing the lights?

"A. He seemed to be.

"Q. How far was he in front of the car that passed you?

"A. He seemed to be about something like thirty yards.

"Q. How far was your car from him when you first saw this man?

"A. It was about forty yards away I reckon, or something like that, it may have been down to thirty when I saw the man by the light of the car that run around me.

"Q. Was the man walking along ordinarily, apparently?

"A. To be sure, he looked to be that way.

*    *    *    *    *    *    *    *    *

"Q. You saw him by the lights of the other car?

"A. Yes, sir.

"Q. And those lights were shining on him?

"A. Yes, sir, until he got straight in front of him and then I didn't see the man any more.

*    *    *    *    *    *    *    *    *

"Q. Isn't it a fact that the car in front of you did not get off the hard surface road?

"A. I don't know, but I don't think it did, I don't know about that.

"Q. Apparently it did not, the best you could see, it did not?

"A. Yes, sir.

"Q. So the car did not get off the hard surface of the road?

"A. No, sir, because when he cut in front and made that left hand cut again I suppose it was to straighten out the car, then cut out to his left.

"Q. When he straightened out he certainly had not gotten off the road on the right hand side, had he?

"A. No, sir, not apparently.

"Q. This man who was walking on the right hand edge of the road could have stepped off and the car would have passed on by him, couldn't he?

"A. Yes, sir, he could have did that."

Hairston only saw Catron "just at a glance," and if his evidence be true, from the time he caught this glance of Catron not more than three seconds elapsed before the Birchfield car struck him. At that time Catron was from ninety to 120 feet in front of Birchfield's car, which must have been going at thirty miles an hour (forty-five feet per second) or more, and Catron, walking as Hairston describes him, could not have gone more than from twelve to fifteen feet before he was struck.

The evidence must be considered in the light of these facts and the fact that not only the tracks in the snow, but also the testimony of Hairston places Catron off of the hard-surfaced part of the road, certainly until he was at or within a few steps of where he was struck. I find no evidence which I think warrants more than a guess that Catron was struck when off the hard-surfaced part of the road, or that Birchfield's automobile ever ran off the hard-surfaced roadway on the berm of the road. On the contrary, I think there is ample evidence to warrant the inference that Catron stepped from the berm of the road on the hard-surfaced part of the road immediately in front of the Birchfield car, and was there struck.

It is my conclusion that the judgment of the trial court is correct.