# Richmond

CLARA D. STUART v. ELAINE JOYCE COATES, AN INFANT, ETC.

April 21, 1947.

Record No. 3167.

Present, Holt, C. J., and Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*R. O. Norris, Jr.* and *Alexander H. Sands,* for the plaintiff in error.

*Dabney Overton* and *George E. Allen,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Elaine Joyce Coates, a school girl fifteen years old, referred to herein as plaintiff, was struck and injured by an automobile driven by Mrs. Clara D. Stuart. By her next friend she brought suit alleging that her injuries were. due to the negligence of Mrs. Stuart, and recovered a judgment for $9,000. This we are asked to reverse because of error said to have been committed by the trial court in granting and refusing instructions and because the verdict is excessive.

The accident happened about eight o'clock on the morning of November 14, 1944, on a straight section of State Highway No. 3 between Nomini Grove and Lyells in Westmoreland county. The hard surface of the highway where the accident occurred was 20 feet wide with shoulders six feet wide on each side. The road runs approximately north and south. A map was filed showing the road as straight for about 1300 feet north of the place of accident and more than 2000 feet south of it, with its elevations for about 1300 feet on each side of the place of accident. The elevations at each end of the 2600 foot section were practically the same, but between these points the road was not altogether level. There were small elevations and depressions, designated on the map as knolls and bottoms.

The plaintiff lived in the home of her parents on the east

side of the road. Coming south from Nomini Grove toward Lyells, the way the defendant was driving, there is a slight downgrade for 600 feet to a bottom 134 feet north of plaintiff's home. From that bottom the road rises less than four feet to the top of the next knoll 300 feet south of plaintiff's home. From that knoll there is a slight downgrade for 560 feet to the next bottom, which is about six feet lower than the top of the knoll. The accident happened about half way between the top of that knoll and that bottom. It was almost level from the Coates gate to the place of accident.

On the morning of the accident the plaintiff left her home, turned south, which was to her left, and started walking toward Lyells to catch the school bus to Warsaw, where she attended school. A little while before, Mrs. Stuart, the defendant, driving a Buick automobile, left her home in Montross, to the north of plaintiff's home, starting to Richmond on this same road. In the car with her were Mrs. Sanford on the front seat, and Mrs. Harvey on the back seat. They overtook the plaintiff about 600 feet south of her home and struck her from the rear, inflicting the injuries for which this suit was brought.

As usual, the reasons given for the accident were widely different. The case made by the plaintiff and her witnesses was that the plaintiff was walking on the edge of the hard surface on her left side of the road. The road was dry, the sun was shining and it was a clear, bright, frosty morning. The plaintiff could see clear to Lyells in front of her about a mile away. She could be seen for about three-tenths of a mile back of her by a person driving an automobile as Mrs. Stuart was doing. Under those conditions and in that position on the road, she was without warning struck from behind by the automobile of the defendant and knocked into the ditch on the left-hand side of the highway. She lay there beside the road for sometime, suffering from concussion and other injuries later to be described, and was then taken in an ambulance to a Richmond hospital where she remained for

five weeks, and for the first four or five days the doctors did not know whether she would live or die.

The testimony of the defendant and her witnesses was that it was not a clear morning, but hazy and foggy, particularly in the low places on the road; that Mrs. Stuart was driving with care about twenty-five miles an hour on her side of the road with her left front wheel just about the center of the road—certainly not over the center—and suddenly there was a dense fog in the depression ahead, and in the midst of the fog they suddenly came on a figure in the road which had not been visible before. The figure (the plaintiff) seemed to be exactly in line with the left front fender, according to Mrs. Sanford, and about six feet away when she first saw her. According to Mrs. Stuart, she was about half-way between the radiator cap and fender, and she was then not closer than 15 feet and not farther away than 18 or 20 feet. She described it in these words:

"Well, it was just as if somebody had lifted a curtain. That is the only way I can describe it. It doesn't sound possible, but I am just telling you exactly as it happened. It was just as if somebody, as we ran into a blank wall, and suddenly that blank wall was just opened and there stood this girl."

When she saw the child, she said, she turned or twisted the car to her right with all her strength, and just as she did so Mrs. Sanford yelled "Oh, there is a child," or "You hit a child," and the child was struck before Mrs. Sanford completed her sentence.

She testified that when she stopped her car (which the plaintiff's evidence showed was 123 steps beyond the place of accident) and went back to where the child was lying, the child asked who struck her, and she replied "I struck you, my dear." The child said "Why did you do that to me?" She replied "My dear, you were over on my side of the road. Why were you?" And the child answered "I don't know." She also testified that when the plaintiff's mother had come and was asserting that Joyce always walked

off the tar, Joyce said "But mother, I was on the road this morning."

Mrs. Harvey, who was on the back seat, said she saw the fog when they were 45 feet or more away from it, but she did not see the child. She heard her sister, Mrs. Sanford, say "Look out, you are going to hit that child," and then the impact came; that when Mrs. Stuart's car stopped they were out of the fog, and she looked back and could not see the child. She immediately went to inform Mrs. Coates, the child's mother. She said she did not hear any conversation between Joyce and Mrs. Stuart or between Mrs. Stuart and others after the accident.

The jury were well warranted in accepting the plaintiff's version of the case. It was amply supported by the testimony and by the physical facts. The plaintiff did not remember and did not think she made the statements to Mrs. Stuart. Mrs. Coates testified that Joyce did not make the statements Mrs. Stuart said she made in the presence of Mrs. Coates.

The plaintiff and nine other witnesses testified that the morning was clear and that there was no fog. Mrs. Coates could see the plaintiff lying beside the road when she came out her gate. Witnesses for the plaintiff testified that immediately after the accident they could see, and did see, the car and the people in the road at the scene of the accident from points ranging from 350 feet to more than 1000 feet back to the north from the Coates home. There was evidence that none of the occupants of the car said anything about any fog in talking about the accident.

Five witnesses testified to admissions by Mrs. Stuart at the scene of the accident that she was to blame for the accident; that a feather blew over her eyes and as she was trying to brush it away her car swerved to the left and struck the plaintiff on the left side of the road. One of these witnesses was a sergeant of the State police, who arrived at the scene and saw the plaintiff lying on the left shoulder of the road. He saw some glass lying 12 or 15 inches from the left edge of the road, nearly opposite to where the plaintiff was lying.

The left headlight of the defendant's car was broken out. There were no brake marks on the road. He asked Mrs. Stuart how it happened, "and she told me that she was coming down the road going to Richmond, and the wind blew the feathers off of the hat down over her face, and she was trying to get the feathers off her eyes so she could see, and when she looked she was right on the child, and struck it." She showed him where the child was when she struck her, and that place was not over two feet from the left edge of the road. She was "standing right there and pointed down and told me that is where she hit her." The other witnesses, who included the superintendent of public welfare of Richmond county, testified to substantially the same statements by Mrs. Stuart. To some she said she was driving in the middle of the road "as all country people do." Another testified that the glass on the left-hand side of the road was from the headlight of defendant's car.

In addition to the glass and the position of the body on the left of the road, one of plaintiff's shoes was in the ditch on the left, her sock was up on the bank, her books were scattered in the ditch, her lunch box and lunch were in the ditch, and none of those things was on the hard surface of the road. If the plaintiff had been struck as the defendant and Mrs. Sanford testified, she would have been knocked through the air more than ten feet to the left by the car as it was being twisted to the right. It is difficult to understand how the conditions described could have resulted if the accident happened according to the defendant's version of it. Mrs. Sanford said it was "something I couldn't explain to save my life." The defendant said it did not sound possible. The jury evidently were of the same mind and their verdict has settled the conflict and established that the accident was due to the negligence of the defendant and not contributed to by any negligence of the plaintiff.

The defendant asserts that the court committed error in giving instructions submitting to the jury the question of defendant's liability under the last clear chance doctrine. Her contention is that the evidence did not justify it, but the

point is argued rather from the viewpoint that the defendant's evidence precluded the application of that doctrine. We have said before that an instruction presenting that question is usually not based on the defendant's version of the accident. (*Clay* v. *Bishop*, 182 Va. 746, 752, 30 S. E. (2d) 585).

█ It was appropriate in this case for more than one reason. The plaintiff's evidence was that she was walking along the edge of the hard surface on her left side of the road. The defendant claimed that even so, she was negligent because she should have been on the shoulder, and further that she was not in fact on the left-hand side of the road but on the right side, which was even more negligent, and in fact the proximate cause of the accident. Assuming that to be true, answered the plaintiff, still the morning was clear, the road was straight, defendant could see her all the way for three-tenths of a mile, and, therefore, it was her duty to blow her horn or slacken her speed, or drive on the other side.

There are many cases in Virginia holding it proper to submit to the jury the last clear chance principle under such conditions. We quote only from the opinion by Mr. Justice Gregory in *Keeler* v. *Baumgardner*, 161 Va. 507, 513, 171 S. E. 592:

"Certain it is that when the court is urged to apply the doctrine, it must look to all of the evidence, which, of course, includes the testimony of all of the witnesses, the physical facts and all of the facts and circumstances which are relevant to the case. If from all of the evidence the jury could reasonably find that regardless of the state of negligence of the plaintiff, the defendant, by the exercise of ordinary care, had a clear chance to save him and failed to do so, then an instruction on the doctrine is justified. In cases, such as the one here, where a defendant is required by law to keep a proper lookout, the test is not whether he actually saw the plaintiff in time to have saved him, but whether he could have seen him in time to have avoided the injury, by exercising ordinary care, and failed to do so."

See also, *Herbert* v. *Stephenson*, 184 Va. 457, 35 S. E. (2d) 753; *Clay* v. *Bishop, supra; Crawford* v. *Hite*, 176 Va. 69, 10 S. E. (2d) 561; *Bennett* v. *Spencer*, 167 Va. 268, 189 S. E. 169; *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389.

The defendant also says that the court erred, after giving the instruction on the last clear chance, in refusing then to give defendant's instruction 10-A as follows:

"The jury are further instructed that if they believe from the evidence in this case that the defendant Clara D. Stuart was guilty of negligence which was a proximate cause of the collision in question, and that the plaintiff Elaine Joyce Coates was also guilty of negligence that contributed efficiently to the collision in question, and that such concurring negligence on the part of both parties continued to the instant of the impact, then they are instructed that this is a case of concurring negligence and neither the plaintiff nor defendant can recover of the other any damages, and they shall bring in a verdict for the defendant."

It was not error to refuse it. In five other instructions the court told the jury, either specifically or in effect, that the plaintiff could not recover if she was guilty of contributory negligence. And in another instruction (No. 15), given on defendant's motion, the jury were told that if the plaintiff knew or in the exercise of reasonable care should have known, that the defendant's automobile was approaching her from behind and was likely to collide with her, and that the plaintiff had a last clear chance to avoid the collision, and failed to do so, they must find for the defendant. The jury were fully instructed on the principle attempted to be stated in instruction 10-A.

Also, as it was offered, the instruction might well have been misleading. It failed to make a distinction that was important. It is only when the negligence of the plaintiff continues as a proximate cause, and has not become a remote cause, that it is fatal to the plaintiff's case under the last clear chance doctrine. As the court told the jury in instruction 15, if the plaintiff herself had a last clear chance to avoid the

accident she could not have recovered. That is because the negligence of the defendant would not then have been the sole proximate cause. The negligence of the plaintiff in not availing herself of her chance to avoid the accident would also have been a proximate cause.

*Harris Motor Lines* v. *Green*, 184 Va. 984, 37 S. E. (2d) 4, illustrates the principle. There the party in whose favor the last clear chance doctrine had been applied, left his unlighted truck on the highway for five hours, with a continuing chance to avoid the accident which he should reasonably have expected to happen, yet did nothing to avoid it. Hence his negligence never ceased to be a cause, as the opinion points out. It could not be separated from the negligence of the driver of the other truck. It never became remote, but was always immediate. It was never superseded or rendered ineffective by the negligence of the other driver. As Mr. Justice Gregory said in that opinion, "If the driver of the truck of the Harris Motor Lines, Inc., had a last clear chance to avoid the collision the other driver had a chance to avoid it for five hours, yet he did absolutely nothing. * * * * Where the negligence of both parties continues down to the moment of the accident and contributes to the injury, neither one of them having a chance to prevent the accident, or both of them having a chance but the chance of neither precedes the chance of the other, the chances of both' subsisting in equal strength up to the time of the injury, the case is one of concurring negligence and there can be no recovery."

That case reaffirms in this language the principle, stated in many prior cases, that the continuing negligence of the plaintiff does not bar his right to recover if the defendant has a last clear chance to keep from injuring him: "In Virginia we have been more liberal than in other jurisdictions in applying the doctrine. We have held, against the majority of other jurisdictions, that even though the negligence of the plaintiff continues to the moment of injury this would not relieve the defendant of liability if he knew or ought to have known the peril in which the plaintiff had negligently placed himself and had had a clear chance, not-

withstanding such negligence, to save him from injury. Barnes v. Ashworth, 154 Va. 218, 153 S. E. 711."

See Herbert v. Stephenson, Clay v. Bishop, Crawford v. Hite, Bennett v. Spencer, cited above, and Hoffecker v. Jenkins (4 Cir.), 151 F. (2d) 951.

In any case whether the doctrine applies is, of course, to be governed by the facts. To determine this, effect should be given to the words that describe the principle,—"last clear chance." "This doctrine is precisely what the name implies," said Mr. Justice Hudgins in Virginia Elec., etc., Co. v. Whitehurst, 175 Va. 339, 8 S. E. (2d) 296. It does not apply unless the defendant's chance to avoid the injury is the last chance and a clear chance. It presupposes, of course, the negligence of the plaintiff and the negligence of the defendant. Although the defendant be negligent, yet, if such negligence is not the sole proximate cause of the accident, but the negligence of the plaintiff is also a proximate, as distinguished from a remote, cause, the defendant is not liable.

Where both are negligent, the defendant becomes liable only in case, before their combined negligence has united to produce the accident, reasonable time and opportunity are available to the defendant, but not to the plaintiff, to avert the accident. In that case, the failure of the defendant to use his time and opportunity becomes, in effect, a new act of negligence and the proximate cause of the accident. Liability follows unless the plaintiff, after his initial negligence, has like time and opportunity to save himself. If he has, and does not use it, his failure becomes contributory negligence that bars his recovery. Under the doctrine of last clear chance, continuing or concurring negligence on the part of the plaintiff may not bar recovery. It does so only if it continues or concurs as a proximate cause, and it is then in reality contributory negligence.

The defendant also says that the court erred in the subject matter and in the method and time of giving to the jury an oral instruction telling them that where, as in this case, the hard surface of the highway was 20 feet wide, a pedestrian

complies with the law by walking on the extreme edge of the hard surface.

The court had previously in written instruction 11, offered by the defendant, told the jury that the law required one walking on the highway to keep as near as reasonably possible to the extreme left side or edge of the *highway*, and that the plaintiff was guilty of negligence if she had not done so.

Section 2154(126), (f) of the Code, 1942 (Michie), provides: "Pedestrians shall not use the highways, other than the side-walks thereof, for travel, except when obliged to do so by the absence of sidewalk, reasonable, suitable and passable for their own use, in which case they shall keep as near as reasonably possible to the extreme left side or edge of same."

■ Defendant's argument is that this language forbids the pedestrian to walk on the edge of the hard surface, and requires him to walk on the edge of "the natural boundary of the highway or the usable portion of such highway as generally accepted by the public." We do not agree with this view. This court has heretofore so indicated.

In *Catron* v. *Birchfield*, 159 Va. 60, 165 S. E. 499, the hard surface was about 18 feet wide with gravel shoulders on each side about two feet wide. It was testified that Catron was walking "on the north side of the road, near the edge of the hard surface;" and it was held that if that was true, he was lawfully walking on the highway, "as near as reasonably possible to the extreme left side or edge of same."

In *Crawford* v. *Hite, supra,* it was said (p. 75): "It is argued that in walking on the hard-surfaced portion of the road instead of on the shoulder, Mrs. Cook was guilty of contributory negligence which bars a recovery here. This contention is not sound."

In *South Hill Motor Co.* v. *Gordon*, 172 Va. 193, 200 S. E. 637, the plaintiff testified he was walking on the left edge of the hard surface. It is not indicated that it was claimed he was negligent for that reason, but section 2154 (126), (f) of the Code was quoted and it was said that the Virginia

Motor Vehicle Code recognizes the right of both the pedestrian and motorist to use the highways for travel, and that "under normal conditions the pedestrian must keep as near as reasonably possible to the extreme left side or edge of the highway, and the operator of a motor vehicle must drive upon his right half of the highway."

Section 2154(112) requires the motorist to drive on the right half of the highway subject to the limitations therein stated. That is commonly and logically accepted as meaning the right half of the hard surface, where there is one. There is nothing to indicate and no reason to suppose that "highway" as used in section 2154(126), (f) means something else for the pedestrian. We think that in both instances it meant the paved surface when applied to the facts of this case. The pavement was 20 feet wide as stated. There were no sidewalks. There were no traffic conditions to prevent a pedestrian from using the hard surface. Modern roads usually comprise pavement, shoulders, slopes and ditches. The right of way here was 50 feet wide. The shoulder was not the extreme left-hand edge of the right of way. If there was a usable part to the left of the shoulder, the argument against the instruction would be as valid if the plaintiff had been walking on the shoulder. The court properly instructed the jury on the meaning of the statute.

Complaint is made that the defendant was prejudiced by the time and manner of giving the instruction. During his concluding argument, counsel for defendant was arguing that if the plaintiff was walking on the edge of the hard surface she was not on the extreme left edge of the highway, as the court had instructed the jury it was her duty to be. His statement was challenged by plaintiff's counsel and a colloquy ensued as to the meaning of that instruction. The court did not settle the question immediately but at the conclusion of all the argument said this to the jury:

"In view of what has taken place in this argument on the part of Mr. Norris, contradicted by Mr. Overton, I think it would be cowardly for me to sit here and let you gentlemen speculate on what is meant by the law, and I am going to

take a definite stand." And thereupon the court gave to the jury the oral instruction above stated.

In view of the controversy about the instruction that had been given, it was entirely proper for the court to clear up the matter and not leave the jury in the dark on that important question, raised as it was by the argument of defendant's counsel. A more appropriate time for giving the oral instruction would have been when the matter arose, and a more appropriate manner of giving it would have been to omit the somewhat dramatic introduction to its giving, as well as a statement of like import at the conclusion of it. The situation did not seem to require a defense by the court before the jury against a charge existing only in the mind of the court and of which the jury were not aware. It had nothing to do with the correctness of the legal proposition stated. The only purpose that needed to be served was to tell the jury what the law was. The incident was not of sufficient moment; however, to affect the result of the trial.

Finally the defendant complains that the verdict was excessive. The plaintiff was seriously injured. As stated, it was uncertain for the first few days whether she would live. The nature and effect of her injuries were given in detail by the medical testimony. Dr. Graham, for the plaintiff, testified that she had a concussion, that her pelvis was broken in two places, and that she would have some permanent deformity, but not a great deal of permanent disability. Dr. Mauck, for the defendant, examined the plaintiff nearly a year after the accident and testified that the plaintiff had suffered a cerebral concussion, several breaks of her pelvis, a hemorrhage over the bone of her right leg, resulting in some thickening, and a cut on her left leg. There was other evidence that she had suffered a great deal, and was still suffering with her stomach and bladder. She was in the hospital five weeks. She was unable to walk for about three weeks after she got back home, and it was a month before she went back to school. At the time of the trial (April, 1946) she still experienced pain when she walked, was nervous and wakeful at night, and was still receiving medical care.

"Compensation for pain, suffering, broken bones and permanent disfigurement cannot be measured by a mathematical rule.

" * * * * 'The settled rule is that as there is no legal measure of damages in cases involving personal injuries, the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality or corruption, or that they have been misled by some mistaken view of the merits of the case.' " *National Fruit Product Co.* v. *Wagner*, 185 Va. 38, 37 S. E. (2d) 757.

There is nothing to indicate the presence of any of those elements in this case. The evidence is ample to support the verdict. We find no prejudicial error in the trial and the judgment is therefore

*Affirmed.*