# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

### D. B. Crouse v. Jesse Pugh.

September 8, 1948.

Record No. 3363.

Present, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*Fred B. Gentry* and *M. S. McClung*, for the plaintiff in error.

*T. W. Messick* and *L. E. Hurt, Jr.*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Jesse Pugh to recover damages for personal injuries sustained by him as a result of being struck by an automobile owned and driven by D. B. Crouse, the defendant.

Both at the conclusion of the plaintiff's evidence and at the conclusion of all of the evidence, the defendant moved the court to strike out all of the plaintiff's evidence on the ground that it failed to show any negligence on the part of the defendant. The trial court overruled both motions. The jury returned a verdict for $5,000 in favor of the plaintiff, upon which the court entered judgment.

The defendant asks us to reverse the judgment and set aside the verdict as contrary to the law and the evidence and without evidence to suport it, and because the trial court erred in granting and refusing certain instructions.

The contentions of the defendant necessitate a recital of the evidence somewhat in detail.

The accident occurred about 8:00 p. m. Sunday night, March 17, 1946, on Lee Highway (Route 11), approximately one-quarter of a mile west of the corporate limits of the town of Salem, Virginia. Lee Highway runs east and west. At the point of the accident it is level and straight for approximately one-half a mile in each direction, east and west, and consists of an eighty-foot right of way with thirty and two-tenths feet of hard surface in its center. The hard surface is divided into three separate traffic lanes designated by white markers, each approximately four-tenths of a foot wide. On its south side there is a space fourteen feet in width, herein referred to as a shoulder, consisting of a travelled portion, six feet wide, surfaced with gravel, and eight feet of dirt and grass. There are no sidewalks on either side for pedestrians. On both sides there is a thickly settled community, largely residential, but which includes some business places, such as a filling station, a tea room, and a tourist court.

Jesse Pugh, thirty-three years of age, lived just west of the corporate limits of Salem on the south side of the highway. On the afternoon of March 17, 1946, he went to the home of A. W. Hall, a friend, who also lived some distance south of the highway and west of the home of Pugh. His visit lasted approximately two hours, during which he drank a bottle of beer. He left the home of Hall

in company with a friend, Harry Foutz. Both walked along a private road until they reached the south edge of the right of way of the highway, where there was a building known as Richards Dry Cleaning Company. At this point Pugh and Foutz parted company. Foutz turned to his left and started travelling in a westerly direction. Without crossing the highway, Pugh turned to his right and proceeded easterly towards his home, walking on the gravel shoulder on the southern portion of the right of way of the highway, that is, on the right side thereof. At a point seven hundred and seventy feet east of the point where he entered the highway, he was struck by an automobile being driven eastwardly by the defendant. He sustained a compound fracture of the left leg, concussion of the brain, and suffered multiple contusions and abrasions about the body. His hospital and medical expenses amounted to $690.37. He was unable to resume his usual work for thirty-five months.

The evidence of the facts surrounding the accident are sharply in conflict. The case made by the plaintiff and his witnesses shows that while it had rained on and off during the afternoon of that day, it was not raining at the time of the accident and there was no fog. The road was wet. Vehicular travel on the highway was heavy, and the cars were "running pretty fast." Under these conditions, Pugh was walking eastwardly on the gravel shoulder off the right edge of the hard surface of the road when he was, without warning, struck from behind by the automobile of the defendant. The first person to reach the scene found him unconscious, with his head about eighteen inches to two feet from the hard surface and his feet pointing towards the ditch on the southern boundary of the highway. Broken glass from the headlight of the defendant's car was scattered on the shoulder of the road, and the body of the plaintiff was lying on a large section of the glass. There was no glass on the paved surface.

Edward H. Foutz, driving an automobile westwardly in the north lane of the highway that evening, saw Pugh a

short distance west of the point of the accident walking eastwardly on the gravel shoulder on the south side of the road and waved to him. He said the weather was clear and visibility was good because of lights shining along the highway. He observed that Pugh was "walking where pedestrians usually and customarily walked." This witness drove forward two or three blocks, turned around, and immediately returned eastward. On his return he and one of his children saw the body of Pugh lying on the gravel shoulder. He was the first one to reach the scene after the accident. He saw the car of the defendant where it had been stopped one hundred and fifty-eight feet to the east and the defendant coming towards Pugh. Pugh was unconscious and the witness thought he was dead. His body was pointed towards the hard surface, his head being about eighteen inches to two feet therefrom and his feet towards the ditch.

The other witnesses testified to the same location of the body of Pugh.

The testimony of the defendant and his witnesses was that it was a cloudy, rainy night, and that it was necessary for operators of automobiles to operate their windshield wipers.

Crouse testified that he was driving about twenty-five to thirty miles an hour on his right side of the road, with his left front wheel near the southern white line of the middle lane; that immediately prior to the accident, he met an oncoming car travelling west in the north lane with bright lights; that he was unable to get the driver of that car to dim his lights; that he, the defendant, was blinded by the lights, but, nevertheless, dimmed his own lights and continued moving east, watching the white line on the road to see that he stayed in his proper lane; that just as the oncoming car passed him, he saw the plaintiff six feet in front of him on the hard surface of the road just to the right of the center of the front of his car; that he slammed on his brakes but struck the plaintiff on the pavement before he could stop; and that the wheels of his car did not leave the pavement, nor did the car run over Pugh after the impact. He there-

after drove his car about fifty feet, stopped on the side of the road, went back to aid the injured man, and found Pugh, dressed in dark clothes, with his head lying on the hard surface of the road and his body on the shoulder. Other witnesses said they saw Pugh's head about six inches on the pavement.

An examination of the defendant's car disclosed that, as a result of the collision, his right front headlight and its glass were broken and dents had been made in the right front fender and in the right side of the hood of his car.

The defendant said his bright headlights would light up the highway one hundred and fifty to two hundred feet ahead of him; but when he dimmed his lights he had a clear vision ahead for only twenty-five or thirty feet. Asked to explain why he didn't see Pugh until he was within six feet of him, when, just before the accident, with his bright headlights, he should have seen him for a distance of one hundred and fifty feet or more, and with his dim lights a distance of at least twenty-five or thirty feet, he said: "I can't explain why I didn't see him."

Two days after the accident, when asked by the father of the plaintiff how it occurred, the defendant said "I will just tell you the truth. It was so dark I couldn't see my hand in front of me that way." (Holding up his hand in indication.)

Thus, the position of the plaintiff on the highway at the time he was struck became a material, if not the most material, question in the case. The evidence of the plaintiff and his witnesses unequivocally placed him on the gravel shoulder. The physical facts, such as the location of the body of Pugh and the shattered glass solely on the shoulder furnished support and corroboration. The defendant failed to explain why he didn't see Pugh before he got within six feet of him.

The defendant contended that whether Pugh was walking on the pavement or on the right shoulder he was, in either event, guilty of negligence as a matter of law by reason of the provisions of Virginia Code, 1942, (Michie), section

2154 (126) (f), now subsection (g), and that such negligence was the efficient and proximate cause of the accident.

The evidence, we think was sufficient to submit to the jury the question of the negligence of the respective parties, under proper instructions.

The trial court gave seven instructions at the instance of the plaintiff and five for the defendant. Defendant contends that the court erred in granting plaintiff's instructions numbered 5, 6, 7, and 10, and in refusing requested instructions A, D, X, Y, and Z.

Instruction number 5 related to the duty of the defendant in the event he became temporarily blinded by the lights of an approaching car. It is in the exact language approved in *Howe* v. *Jones*, 162 Va. 442, 448, 174 S. E. 764. The evidence amply supports the submission of the question whether the defendant complied with his duties, if he struck the plaintiff while he was walking on the shoulder of the road, since there is no attempted explanation why the defendant's car left the paved surface of the wide, straight, level highway and ran down the plaintiff. In the face of the defendant's statement that the plaintiff was struck on the paved surface, there is still no explanation why he was not earlier seen. *Nelson* v. *Dayton*, 184 Va. 754, 36 S. E. (2d) 535.

Instruction number 6 was given under the doctrine of the last clear chance. The evidence justified this instruction. Under the circumstances, it was for the jury to say, even though they may have believed that the plaintiff was guilty of negligence in walking along the south side of the highway, whether they further believed that the defendant, by the exercise of reasonable care, could have avoided striking him and failed to exercise such care. In several instructions the court told the jury specifically that the plaintiff could not recover if he was guilty of negligence, which efficiently contributed to the accident. *Keeler* v. *Baumgardner*, 161 Va. 507, 171 S. E. 592; *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397; *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389; *Clay* v. *Bishop*, 182 Va. 746, 30 S.

E. (2d) 585; *Herbert* v. *Stephenson*, 184 Va. 457, 35 S. E. (2d) 753; *Stuart* v. *Coates*, 186 Va. 227, 42 S. E. (2d) 311.

Instruction number 7 read as follows:

"The Court instructs the jury that it was the duty of the defendant, at the time of his accident, to have operated his automobile upon the paved portion of the highway, and if the jury believe from the evidence that the plaintiff was walking along the shoulder of the highway, and the defendant operated his automobile on the shoulder, and struck the plaintiff, then the Court instructs the jury that the defendant was guilty of negligence, and if such negligence proximately caused the accident, and the injury to the plaintiff, and the plaintiff was not guilty of negligence that contributed to the accident, then the jury must find a verdict for the plaintiff."

Instruction number 10 was in the following language:

"The Court instructs the jury that if they believe from the evidence that the plaintiff was walking on the shoulder of the road at the time of the accident, that the plaintiff would not be negligent as a matter of law; and if you further believe from the evidence that in so walking on the shoulder of the road he used that degree of care that a person of ordinary prudence would exercise under similar or like circumstances, then the plaintiff was not guilty of any contributory negligence."

These two instructions go to the very heart of the case, and require a consideration of Code, section 2154 (126) (f) and related sections.

Code, section 2154 (49) (f) specifically provides that the word "highway," when used in "The Motor Vehicle Code of Virginia" (Acts of 1932, chapter 342, pages 613, 614, subsection (f) of section 1), shall mean:

"Every way or place of whatever nature open to the use of the public for purposes of vehicular travel in this State, including the streets and alleys, towns and cities."

This section needs no construction. Its meaning is perfectly plain, comprehensive and unambiguous. It does not limit the meaning of the word "highway" to a hard-

surfaced or partly hard-surfaced way or to a dirt and gravel way. It does not confine a highway to the main-travelled portion of the way or to lanes specifically designated for vehicular traffic. No exception is made as to the shoulders or slopes of a way. The nature of the way or place is not determined by whether the way is improved or consists of dirt and gravel. The paving of a way does not make it a "highway." The true test is whether the "way or place of whatever nature" is "open to the use of the public for purposes of vehicular travel." We find nothing in the context of the Motor Vehicle Code which indicates a different meaning.

The Motor Vehicle Code of Virginia recognizes the right of both the pedestrian and motorist to use the highways for travel. Pertinent to this case, Code, section 2154 (112) and section 2154 (114), subsections (a) and (b), specify the manner of the exercise of the rights of a motorist under normal conditions, and Code, section 2154 (126) (g), as amended by Acts 1944, chapter 388, regulates the exercise of the rights of a pedestrian using the highways for travel.

Code, section 2154 (112) provides that "Upon all highways of sufficient width the driver of a vehicle shall drive the same upon the right half of the highway," subject to the limitation therein stated.

Code, section 2154 (114) reads as follows:

"Special regulations applicable on streets and highways laned for traffic. Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

"(a) A vehicle shall normally be driven in the lane nearest the right hand edge or curb of the highway when said lane is available for travel except when overtaking another vehicle or in preparation for a left turn or as permitted in subsection (d).

"(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

166

Code, section 2154 (126) (g), formerly section 2154 (126), (f), in effect at the time of the accident herein involved, provides:

"Pedestrians shall not use the highways or streets, other than the sidewalks thereof, for travel, except when necessary to do so because of the absence of sidewalks, reasonably suitable and passable for their use, in which case they shall keep as near as reasonably possible to the extreme left side or edge of the highways or streets." (Acts 1944, ch. 388.)

In construing section 2154 (73) (h), Virginia Code, 1930, (Michie), now Code, section 2154 (126) (g), as amended in 1944, we held that its object was to require "a pedestrian at all times to keep as near to the extreme left of the highway as possible, so as to face and be able to see cars approaching from the opposite direction, and be out of the way of cars on the right of the highway approaching from behind." *Saunders* v. *Temple*, 154 Va. 714, 153 S. E. 691.

The provisions of the statute protect a pedestrian from the quiet approach of vehicles or the confusion that may arise from the noise of the mechanism of a vehicle approaching from the rear. They give him the benefit of seeing an oncoming vehicle and an opportunity to take such action as may be necessary for his own safety.

Modern paved roads have shoulders both for the support of the paved surface and for the protection and safety of vehicular travel. Some shoulders are hard-surfaced, others have a surface of dirt or gravel. The surface of each at their junction is built on the same plane to provide for safety of movement by vehicles which turn off the hard surface for any reason or cause. They provide the means, place, or way by which a vehicle may reach the curb or edge of the roadway, or have access to the premises of the adjoining landowners. Obstruction to vehicular travel is prohibited. That they are kept "open to the use of the public for purposes of vehicular travel" can hardly be questioned. It is the right to travel thereon, not the necessity which requires travel, that determines the open nature of the way or place.

In the present case, the highway had been divided into

three clearly marked lanes for traffic. The right-hand lane was available to the defendant for travel towards the east. The extreme left side or edge of the highway was available to the plaintiff for travel, using due and proper care for his safety.

While a pedestrian walking on a right shoulder may not occupy as dangerous a position as one walking on the right edge of the paved surface, he is, nevertheless, in a position of danger by reason of the possible inadvertence and negligence of operators of vehicles, by conditions requiring the use of the shoulder by motorists, or by such circumstances as are claimed to have arisen in this case. Though less compelling, the same reasons of safety which require a pedestrian to walk so as to face oncoming vehicles apply to one who walks on the right shoulder of the highway. A pedestrian who does not comply with the statute and its purpose does not avail himself of every reasonable precaution for his safety. A violation of Code, section 2154 (126) (g) amounts to negligence as a matter of law. Whether or not such violation be a remote cause or the cause which proximately contributes to the injury is a question for the jury.

In *Clay* v. *Bishop, supra,* the plaintiff, at the moment he was struck by a truck, and for some time prior thereto, had been walking eastwardly along the highway on the dirt shoulder on the south or his right-hand side of the road, leading a horse by the bridle. The trial court instructed the jury that the plaintiff was guilty of negligence as a matter of law in walking on the right-hand shoulder of the road, but submitted to them the question whether, under the circumstances existing, the driver of the truck had a last clear chance to avoid the accident. In sustaining a judgment for the plaintiff, Mr. Justice Eggleston said: "We need not stop to consider *whether this statute* (Code, section 2154 (126) (f) ) *applies to one who is leading a horse or other animal along the highway.* (Emphasis added) Even if it be assumed that the statute does apply, and that its violation was negligence *per se,* yet it was for the jury to say

whether such violation was the remote cause and the negligence of the driver was the proximate cause of the accident."

See *Scalf* v. *Eicher*, 11 Cal. App. (2d) 44, 53 P. (2d) 368, the only case cited to us involving the definition of a "highway," on a state of facts somewhat similar to those before us, where the California court held that a pedestrian in walking on the shoulder of his right-hand edge of the paved road was using the highway as that word was defined in the California Vehicle Act.

The California Act provided that it "shall be unlawful for any pedestrian to walk along and upon any highway * * * otherwise than close to its left-hand edge."

Section 21 of the same Act defined "highway" as follows:

"Every highway, road, street, alley, lane, court, place, trail, drive, bridge, viaduct or trestle laid out or erected as such by the public or dedicated or abandoned to the public or intended or used by or for the general public except such portions thereof as are used or prepared for use by pedestrians as sidewalks."

The plaintiff undertakes to justify his contention that the provisions of Code, section 2154 (126) (f) apply only to the paved or main-travelled part of the highway, where no place for walking is provided other than the dirt shoulder, by reliance upon the recent case of *Stuart* v. *Coates, supra*.

The facts in the cited case and the point of law involved were wholly different from those present here. There the pedestrian contended that while she was walking on her left side of the road, on the extreme edge of the twenty-foot wide hard surface of a highway, she was, without warning, struck from behind by an automobile travelling in the same direction in which she was going. The operator of the automobile claimed that the pedestrian was negligent because she should have been on the left shoulder of the road and, further, because she was in fact on the right-hand side. After the jury had been instructed that the law required one walking on the highway to keep as near as reasonably possible to the extreme left side or edge of the *highway*, and that the plaintiff was guilty of negligence if

she had not done so, they were further told "that where, as in this case, the hard surface of the highway was twenty feet wide, a pedestrian complies with the law by walking on the extreme edge of the hard surface." (186 Va. 238).

The defendant strenuously objected to the instruction as amended.

While there was a question of fact as to which side of the road the plaintiff was walking on there was no claim made that she had a right to travel on her right side. On the other hand it was contended that she was negligent because she was on her right side, on the edge of the pavement. The questioned instruction dealt solely with her right to walk on the extreme left edge of the hard surface, under the conditions there existing.

According to the plaintiff's evidence, she was keeping as near as reasonably possible to the extreme left side or edge of the paved surface, while the motorist was travelling on his left half of the highway in violation of the statute, at the time when the accident happened. Nowhere in that case did we intimate that pedestrians can comply with the statute by walking on the extreme right edge of the paved surface of the highway or on the right shoulder thereof. We held that the questioned instruction was proper as *applied to the facts of that case.*

See *Catron* v. *Birchfield,* 159 Va. 60, 165 S. E. 499; and *Crawford* v. *Hite,* 176 Va. 69, 10 S. E. (2d) 561.

As applied to the facts of this case, we are of opinion that the court erred in granting instructions numbered 7 and 10. Number 7 was a finding instruction, based on a partial view of the evidence and on an incomplete statement of the law. It was misleading and confusing. Instruction number 10 was improperly given for the reasons heretofore stated.

Instruction A was a finding instruction, and left out any reference to the last clear chance doctrine. The duty of the jury, in the event they found the plaintiff guilty of negligence, which was the proximate cause of his injuries, was correctly set out in instruction B, given at the instance of the defendant.

The trial court gave instruction F, based upon the defendant's version of the accident, that the plaintiff was using the paved portion of the highway on the right or south side thereof for travel at the time he was injured, and correctly set out the duties and responsibilities of the parties.

■ Instruction D set out the duty of the plaintiff to protect or save himself from the defendant's negligence under the last clear chance doctrine. There is no evidence that the plaintiff had a last clear chance to avoid the accident. If he was walking on the shoulder, he had no reason to assume that the automobile would not stay upon the paved portion of the highway until the contrary appeared. No appreciable length of time was shown to have existed between the time the automobile left the paved portion and struck the plaintiff.

Instructions X, Y, and Z, which the trial court refused to grant, each began with a recital of Virginia Code, 1942, (Michie), section 2154 (126) (f).

Instruction X stated that regardless of whether Pugh was walking on the right side of the hard surface of the highway or on the right shoulder he was guilty of negligence as a matter of law, and was not entitled to recover unless defendant, under the doctrine of the last clear chance, failed to avail himself of an opportunity to avoid striking the plaintiff.

Instruction Z told the jury that regardless of whether Pugh was walking on the hard surface as the defendant contended, or on the shoulder as the plaintiff contended, he was guilty of negligence as a matter of law, and that if they believed that such negligence was the sole proximate cause of the accident, he was not entitled to recover.

These two instructions were refused because they were in conflict with the instructions given.

Instruction Y was refused because it was covered by instruction F, already given at the request of the defendant.

■ Inasmuch as the error of the court in granting instructions 7 and 10 requires a reversal of the judgment of the trial court and a new trial, it is only necessary to say that on a new trial due consideration will doubtless be given to

such instructions as may then be requested in view of the evidence presented, and in accordance with the principles herein expressed.

For the reasons given, we are of opinion to reverse the judgment of the trial court, set aside the verdict of the jury, and remand the case for a new trial.

*Reversed and remanded.*

BUCHANAN, J., dissenting.

The trial court told the jury in effect by Instruction No. 10 that it was not negligence as a matter of law to walk on the right-hand shoulder of the road, but whether it was negligence in fact was a question for the jury.

The majority opinion holds that it was negligence as a matter of law; that is, that the plaintiff violated section 2154 (126) (g) of the Code (Acts, 1944, ch. 388, p. 616) in walking on the right shoulder of the road.

I disagree with that conclusion because I do not think the statute should be so construed. We did not so construe it in *Stuart* v. *Coates*, 186 Va. 227, 42 S. E. (2d) 311, decided last year. It is true the facts there were different, but the statute under construction was the same. This decision holds that the word "highway" in the statute has a different meaning in this case from what we said it meant in the *Coates Case*. I think it means the same thing in both cases and that its meaning should not be varied to fit different facts.

The same statute was in effect then as now. It provides that if there are proper sidewalks to walk on, the pedestrian shall use them; but if not, and he is obliged to use the highway, he shall keep as near as reasonably possible to the extreme left side or edge of the highway.

The pedestrian in the *Coates Case* was walking, she said, on her left edge of the hard surface. The hard surface was 20 feet wide. There was a shoulder to her left six feet wide, level and usable. The contention was that in walking on the hard surface instead of the shoulder the pedestrian was

guilty of negligence as a matter of law. The trial court instructed the jury that the pedestrian complied with the law by walking on the edge of the hard surface. We said that was right; that we had indicated as much previously in the cases of *Catron* v. *Birchfield*, 159 Va. 60, 165 S. E. 499; *Crawford* v. *Hite*, 176 Va. 69, 10 S. E. (2d) 561; and, *South Hill Motor Co.* v. *Gordon*, 172 Va. 193, 200 S. E. 637.

We said there that section 2154 (112) of the Code requires the motorist to drive on the right half of the "highway," which was commonly accepted as meaning the right half of the hard surface, where there is one; and that there was nothing to indicate, and no reason to suppose, that "highway" as used in section 2154 (126) (g) means something else for the pedestrian.

If "highway" in section 2154 (126) (g) includes shoulders, it includes shoulders on both sides, and pedestrians would not comply with the law by walking on the left edge of the hard surface. They would have to walk on the left edge of the shoulder, or the left edge of the slope beyond the shoulder, or on out to the edge of the right of way if usable for vehicular travel. There is no more basis for including shoulders than for including the rest of the right of way where traffic may use it.

If "highway" includes shoulders and slopes in section 2154 (126) (g), it should, for the same reason, include shoulders and slopes in section 2154 (112), requiring automobiles to be driven "upon the right half of the highway." Using the right half of the hard surface in that event would violate that statute if the shoulders were of unequal width.

Unless "highway" in section 2154 (126) (g) includes shoulders and slopes on both sides of the pavement, then the pedestrian in this case violated no statute in walking on the right shoulder of the road.

In the court's opinion the definition of "highway" as given in section 2154(49)(f), is stressed and it is said that the true test is whether the way or place of whatever nature is open to the use of the public for purposes of vehicular

travel, and "no exception is made as to the shoulders or slopes of a way."

The right of way in this case was 80 feet wide. From the edge of the pavement to the ditch was 14 feet. Six feet of that was gravel and eight feet was grass. All of it was level. If "highway" includes shoulders and slopes, then the right half of the highway for the automobile under section 2154(112) would be determined by the ditch lines, not by the hard surface; and under section 2154(126)(g) the pedestrian could not walk on the left edge of the hard surface, as held in the *Coates Case;* nor yet on the left shoulder, but he must walk at the ditch line to escape being negligent as a matter of law, because the ditch line only would be "the extreme left side or edge of the highway."

The purpose of section 2154(49)(f) was not, I think, to define the area within the right of way lines that should be used by the automobile and the pedestrian, but to distinguish "highway" as used in the Motor Vehicle Code from a "private road or driveway," as illustrated by *Morris v. Dame,* 161 Va. 545, 555, 171 S. E. 662.

Both the sections of the Motor Vehicle Code regulating automobile and pedestrian travel, and various opinions of this court, coincide with what I believe is the popular notion that "highway" means the hard surface where the way is paved.

The driver of an automobile who hears the approach of a police or fire department vehicle would doubtless think he was complying with section 2154(125) by driving to the edge of the pavement, rather than to the edge of the shoulder or slope.

A driver who enters from the side a "highway" which is part of the State highway system, would suppose he was complying with section 2154(132) by stopping immediately before entering on the hard surface rather than before entering the right of way.

The driver who pulls off of the hard surface before stopping his car has heretofore been accustomed to believe he was complying with section 2154(133) prohibiting stop-

ping in such way as to render dangerous the use of the "highway" by others.

In *South Hill Motor Co. v. Gordon, supra,* 172 Va. 193, 199, 200 S. E. 637, 640, the pedestrian who was injured "was so near to the left-hand edge of the hard surface that two steps would have put him on the shoulder of the road, where the car would have cleared him." It was said there that "the *highway* in the vicinity of the scene of the accident is eighteen feet wide with a six-foot dirt shoulder on each side." (Emphasis added).

It was not suggested in the carefully considered opinion in that case, dealing with all the statutes here involved, that such act was contributory negligence as a matter of law, but the plaintiff was not allowed to recover because he held to his position in spite of his obvious danger from the approaching automobile. We said there that the Motor Vehicle Code recognizes the right of both the pedestrian and the operator of a vehicle to use the highway for travel, and that "under normal conditions the pedestrian must keep as near as reasonably possible to the extreme left side or edge of the highway, and the operator of a motor vehicle must drive upon his right half of the highway." 172 Va. 203, 200 S. E. 642.

The court's construction of the statute seems to be influenced by what is considered the safer thing for the pedestrian. That is a question that is more properly for legislative consideration. Also, it is open to doubt whether the holding will better prevent accidents. This pedestrian came to the highway from the south side. He lived on the same side, four or five blocks to the east. Traffic was heavy that evening and the cars were running fast. Yet, it is held that he was negligent as a matter of law in staying on the south side, on the shoulder, without, as the opinion says, any "reason to assume that the automobile would not stay upon the paved portion." To escape being negligent as a matter of law, he is now required to cross to the north side, where he could walk on the edge of the pavement if *Stuart*

v. *Coates, supra,* is still the law, and then cross again to the south side when he got opposite his home.

In many places friends live a few feet apart on the same side of a State highway, with their yards abutting on the right of way. Under this decision the neighbor on the left must cross to the opposite side of the highway, proceed on his left to opposite his neighbor's front gate, then cross the highway again to enter his neighbor's yard. Otherwise, he will be guilty of negligence as a matter of law, and, besides that, he will be committing a misdemeanor, because a fine awaits him each time he walks on the right shoulder of the road (section 2154(126)(i) ), although that shoulder may be wider than the paved surface.

I think that where there is an ample pavement "for the purposes of vehicular travel," as in this case, we should not say a pedestrian is guilty of negligence as a matter of law when he walks on the right shoulder or slope of the road, not on the pavement, and that we should leave the question of his negligence in doing so to be determined as a matter of fact, as did the trial court in this case.

STAPLES, J., joins in this dissent.